This case arises under the Workmen's Compensation Law, and involves an appeal from an award made by the Industrial Accident Board. The facts are not disputed.
James Bones, while employed as a miner by respondent Callahan Zinc-Lead Mining Company, was killed by accident in its mines in Shoshone county, Idaho, in the course of his employment, on April 2, 1921. At the time of his death he left the following dependents surviving him, to wit: Mary Bones, wife, and their minor children, Margaret, aged about *Page 88 
twelve years, Michael, aged about ten years, James, aged about eight years, and John William, aged about one and one-half years. Mary Bones removed to Butte, Montana, with the said children, and died there about January 10, 1922. Prior to her death, Mary Bones, as widow and on behalf of said minor children as their mother and natural guardian, made out and signed first notice of death and preliminary application for compensation, duly certified by the employer that at the date of the accident James Bones was in its employ, which said notice and application was received by the Industrial Accident Board on April 25, 1921. Thereafter, on June 1, 1921, a further claim for compensation was prepared for said widow's signature by the respondent surety, Maryland Casualty Company, but never signed by her, although transmitted to and received by the Board. No hearing was had upon the application of Mary Bones, but prior to her death the surety paid her on order of the Industrial Accident Board, on account of said compensation, $372, and reimbursed the employer in the sum of $100 for funeral expenses advanced, in the aggregate $472 so paid by the surety.
Mary Bones left a will appointing her deceased husband's brother, Thomas Bones, executor thereof and nominating him as guardian of the persons and estates of said minors, Margaret, Michael, James and John William Bones. Letters testamentary and of guardianship were duly issued to said Thomas Bones out of the district court of the second judicial district of the state of Montana, in and for the county of Silver Bow, who duly qualified as said executor on February 4, 1922, and as said guardian on February 14, 1922. The will was never probated in Idaho, nor were ancillary letters testamentary issued in said state, nor were letters of guardianship, ancillary or otherwise, ever applied for or issued to Thomas Bones in Idaho.
On February 25, 1922, the said surety and Thomas Bones, as executor, entered into a written agreement whereby said surety agreed to pay the executor the sum of $116.66, due said deceased at the time of her death, on her own behalf *Page 89 
and as natural guardian of said minors, which agreement was filed with the Industrial Accident Board on March 6, 1922, and was approved by said Board without notice or hearing thereon. Said sum of $116.66 was afterwards paid to said Thomas Bones. On the 25th of February, 1922, the surety entered into a further agreement in writing with Thomas Bones, as guardian of said minors, for the payment to said guardian of the total sum of $8,927.11, in weekly payments, in full of all compensation to which said minors might be entitled, until each reached the age of eighteen years. This agreement was likewise filed with, and approved by, the Board on March 6, 1922, without notice or hearing. The surety paid to said guardian, for the period from January 10, 1922, to July 24, 1923, the sum of $960.
On July 30, 1923, the Industrial Accident Board notified the employer and surety to suspend all further payments to said Thomas Bones, which was done, and no further payments were made to said guardian by the surety. Thereafter, on September 23, 1923, letters of guardianship of the persons and estates of said minors were issued to John H. Golden out of the district court of the second judicial district of the state of Montana, in and for the county of Silver Bow, but no letters of guardianship, ancillary or otherwise, were ever applied for or obtained by said Golden in any probate court of the state of Idaho. Under date of December 20, 1923, the Board made an order, without notice, directing the payment to said Golden, as guardian, of the sum of $156 for the benefit of Michael and James Bones, and by order dated February 13, 1924, ordered said surety to pay said Golden, for the benefit of Michael, James and John William Bones, the further sum of $1,379, and on May 25, 1927, without notice, the Board ordered the payment to said Golden of the further sum of $247 for the benefit of said John William Bones.
No findings of fact or conclusions of law were ever made by the Board before approving said agreements or making the orders aforesaid. *Page 90 
Subsequently, other guardians were appointed by the probate court of Shoshone county, Idaho, and payments made to them by the surety. After the appointment of the Idaho guardian, some payments were made to Golden, the Montana guardian, but without notice to the surety or employer of the guardian's appointment in Idaho. Margaret Bones, now McBroom, reached the age of eighteen years on November 29, 1926, and thereafter letters of guardianship issued to her out of the probate court of Shoshone county, Idaho, of the persons and estates of Michael and James Bones, on April 28, 1927, and of John William Bones on July 2, 1927.
The present petition was filed by Margaret Bones McBroom, in her own behalf and as guardian of her said brothers, praying that an award be made upon the application filed by Mary Bones on April 25, 1921, and asking, in effect, that the surety repay the amount paid the executor, Thomas Bones, and the sums paid Thomas Bones and John H. Golden, as guardians, appointed by the Montana court, with interest on each of said amounts.
The Industrial Accident Board made findings affirming all the proceedings had, giving full credit for all payments theretofore made under its orders to the foreign executor and guardians, based upon the agreements with the foreign guardians and orders of the Board subsequently signed. The district court, on appeal, made full findings and an award, allowing respondents credit for all the sums theretofore paid the guardians, including said foreign guardians, and fixed the amounts yet to be paid, allowing interest thereon. As to the $116 paid the executor in Montana of the last will and testament of Mary Bones, deceased, the court disallowed the item and gave judgment against respondents for the amount with interest. Since this appeal, the surety has paid the last amount, and it is no longer a subject of controversy. The amount of the award so made is apparently satisfactory to all concerned, and the only questions presented by this appeal relate to the crediting of the sums paid said foreign guardians, Thomas Bones and John H. Golden, aggregating $2,742, with interest thereon. *Page 91 
The first question presented is that where guardian and ward are both nonresidents of Idaho, and the foreign guardian has not complied with the statutes (C. S., secs. 7889, 7890) authorizing foreign guardians to remove the ward's property into another state, and giving authority for the guardian to receive said property or sue for the same in his own name, can such guardian lawfully enter into a contract fixing compensation under the Workmen's Compensation Law, and receive thereunder the moneys awarded by the Industrial Accident Board?
The act in question contemplates that minors may be dealt with through either their natural or legal guardians.
C. S., sec. 6223, par. 2, as amended Sess. Laws 1921, chap. 217, p. 474, provides among other things:
"If a child has a guardian other than the surviving widow or widower, the compensation payable on account of such child shall be paid to such guardian."
The employer and employee may agree in regard to compensation under the Workmen's Compensation Law and a memorandum thereof shall be filed with the Board. When approved by it, the memorandum shall be for all purposes enforceable under the provisions of C. S., sec. 6271, unless modified as provided in another section — C. S., sec. 6269. (C. S., sec. 6262.)
Court action is provided for enforcement of the memorandum after its approval by the Board. (C. S., sec. 6271.)
In the instant case, prior to the proceedings had on the present petition, no hearing was had nor evidence taken on the application of Mary Bones, and there was no testimony before the Industrial Accident Board upon which to base an award. (Ybaibarriaga v. Farmer, 39 Idaho 361, 228 P. 227.) The only basis for the orders issued by the Board, from time to time, for the payment of compensation to the foreign guardians of said minors, rests entirely upon the agreements between the surety and said foreign guardians.
C. S., sec. 7889, provides that where the guardian and ward are both nonresidents of this state (as here), property *Page 92 
in this state to which the ward is entitled may be removed to another state, territory or foreign country of residence of the ward, upon application of the foreign guardian to the probate court of the county in which the estate, or some part of it, is situate.
C. S., sec. 7890, prescribes the notice to be given and the procedure to be followed. A certificate, under the hand of the clerk and the seal of the court of his appointment, must be filed with the said probate court, showing a transcript of the record of his appointment, his having entered upon the discharge of his duties, and that he is entitled, by the laws of the state or territory of his appointment, to the possession of his ward's estate.
No certificate contemplated by this section was ever filed in any probate court of Idaho by either Thomas Bones or John H. Golden, nor were either of them, so far as the record shows, ever within the state of Idaho, while acting as guardian of said minors.
C. S., sec. 7891, provides that the order of removal authorized by C. S., sec. 7889, supra, acts as a discharge of the executor, administrator, local guardian or other person having possession of the property, on filing the receipt of the foreign guardian of the absent ward therefor with said probate court.
Respondents contend that said C. S., secs. 7889, 7890, and 7891, do not apply to the Workmen's Compensation Law, and it was so held by the district judge. This position is untenable. The law refers generally to guardians of minors, and, it not appearing otherwise from the context thereof, it will be deemed to refer to guardians as contemplated by the general statutes on the subject. The rights and powers of guardians are fixed by statute, and where authority is given a foreign guardian to remove the ward's property from this state (see last C. S., sections referred to supra), the procedure laid down must be strictly followed. It is well settled that, in the absence of statute or rule of comity, the authority of a guardian "is limited to the state in which he is appointed, and he is not entitled by virtue *Page 93 
of his office alone to exercise any right or authority over the person or property of his ward in any other country or state." (28 C. J., p. 1272.)
"The guardian's power is limited by the law, and his acts which the law does not sanction are not binding on his ward." (Stetz v. F. Mayer Boot Shoe Co., 163 Wis. 151, Ann. Cas. 1918B, 675, 156 N.W. 971.)
It has been held that where employer and employee have entered into an agreement for compensation, and payments are made and received thereunder, such agreement is void when it is afterwards determined that the employment is not covered by the Workmen's Compensation Law, as in cases dealing with maritime matters, only cognizable in admiralty by the federal courts. (London Guarantee Accident Co. v. Sterling, 233 Mass. 485,124 N.E. 286; Doey v. Clarence P. Howland Co., 224 N.Y. 30,120 N.E. 53.)
The right to compensation and payment involved in this case arises solely by virtue of the Workmen's Compensation Law of this state. Bones and Golden attempted to represent the wards, solely as guardians by virtue of their appointment as such by a court of a sister state. Not having power to act concerning the wards' property outside the state of Montana, their agreements concerning compensation to be awarded their wards in Idaho were invalid, each having failed to take out letters in this state, or to comply with the statutes governing foreign guardians of nonresident wards having property in this state. The approval by the Board of their agreements with the surety could not make them valid. (See London Guaranty Accident Co.v. Sterling, supra; In re Levangie, 228 Mass. 213,117 N.E. 200.)
It follows that, having failed to comply with the law governing foreign guardians above referred to, the said Bones and Golden were not authorized to receive and transfer to Montana the payments made by the surety.
Any payment, or part payment, made by the surety or employer to either of said foreign guardians, Thomas Bones and John H. Golden, if shown by competent evidence to have been actually applied to the use and benefit of their *Page 94 
said wards, should be deemed voluntary payments for which respondents are entitled to credit under the provisions of C. S., sec. 6238, provided the Industrial Accident Board shall approve them as such.
The portion of the judgment appealed from is reversed, with directions to the district court to enter judgment reversing and remanding the case to the Industrial Accident Board for further proceedings in conformity to the views herein expressed. Costs to appellants.
Budge, C.J., and Givens, T. Bailey Lee and Wm. E. Lee, JJ., concur.
 (September 14, 1929.) ON PETITION FOR REHEARING.