773 P.2d 1130

**Juan HUERTA, Claimant–Appellant,**

v.

**SCHOOL DISTRICT # 431, Employer, State Insurance Fund, Surety,**

and

**State of Idaho, Industrial Special Indemnity Fund, Defendants–Respondents.**

No. 17089.

Supreme Court of Idaho.

April 28, 1989.

Uranga & Uranga, Boise, for claimant-appellant. Louis L. Uranga argued.

Hyde, Wetherell, Bray & Haff, Boise, for respondent, School District # 431 and State Ins. Fund. Michael E. Wetherell argued.

Jim Jones, Atty. Gen., Boise, and Skinner, Fawcett & Mauk of Boise, for respondents, State of Idaho, Industrial Special Indemnity Fund. William L. Mauk, argued.

JOHNSON, Justice.

This is a worker's compensation case. The primary issue presented in this appeal is whether the Industrial Commission correctly concluded that the claimant (Huerta) did not sustain the burden of proving that he fell in the odd-lot category. We affirm the Commission's order. In doing so, we clarify the manner in which a claimant must establish a prima facie case of being an odd-lot worker. We also uphold the Commission's restriction of rebuttal evidence offered at a continuation of the hearing to determine Huerta's disability.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS.

Huerta injured his back in March 1984, while working as a janitor for School District # 431 (the employer). He is Hispanic and was forty-seven years old at the time of this injury. He has a fifth-grade education. Although he speaks and understands English, he cannot read or write either English or Spanish.

Huerta suffered two prior work-related injuries. In 1965 he injured his back while working for a previous employer. In 1979 he injured his left knee while working for the employer in this case. After two surgeries to correct the problems with his knee he returned to work for the employer, where he remained employed until his back injury in this case.

Following his injury in 1984, Huerta saw a chiropractor who referred him to an orthopedic surgeon. This doctor treated Huerta conservatively, prescribing walking, exercise and medication. When this treatment failed to resolve Huerta's back pain, Huerta went to his family physician, who referred him to another orthopedic surgeon, Dr. Bills. Dr. Bills also recommended conservative treatment. After a month Huerta's back had not improved, and Dr. Bills referred Huerta to another orthopedic surgeon, Dr. Bishop. Dr. Bishop performed surgery on Huerta's back to decompress two herniated intervertebral discs in June 1984.

Dr. Bishop monitored Huerta's recovery and suggested that Huerta would be able to return to work on September 1, 1984. Huerta did not recover as quickly as anticipated and was unable to return to work as planned. Following further testing, Dr. Bishop performed a second back surgery in November 1984. In May 1985 Dr. Bishop evaluated Huerta's impairment resulting from the 1984 injury as thirty percent of the whole person. Dr. Bishop rated the impairment due to the condition of Huerta's left knee at five percent of the whole person.

In September 1984 Huerta's compensation file was referred to a field consultant (Montgomery) who worked for the vocational rehabilitation division of the Commission. Montgomery attempted to obtain reemployment for Huerta with the employer, but was unsuccessful. Montgomery considered Huerta to be employable in security work, bus driving or cashiering, but concluded that his employment opportunities were limited because of his physical restrictions, his limited education, his attitude of being totally disabled, and the economic condition of the community.

The State Insurance Fund (the surety), which insured the employer's liability under the worker's compensation laws, hired a private vocational rehabilitation firm to evaluate Huerta. A rehabilitation specialist (Stewart) who worked for this firm concurred with Montgomery that Huerta was a difficult placement candidate because of his physical restrictions, his lack of education, and his apparent reaction to his injuries. In Stewart's opinion Huerta's prospect for employment was limited to sedentary or light duty work.

In September 1985 Dr. Bills evaluated the impairment due to Huerta's 1984 back injury as twenty percent of the whole person. He attributed another eight percent impairment of the whole person to Huerta's knee problems, for a composite rating of twenty-four percent. Dr. Bills indicated that Huerta could lift up to twenty pounds frequently, but should not bend, twist or crouch.

In February 1986 Huerta participated in a functional capacities assessment. As a result of this assessment, it was recommended that Huerta be limited to sedentary work that allowed frequent changes of position and which did not require hand dexterity.

At the request of the surety Huerta was examined by a panel of physicians in July 1986. The panel found Huerta to be suffering from failed back surgery, because the symptoms and pain which had necessitated the surgeries in 1984 had not been relieved. The panel evaluated Huerta's im-

pairment caused by his 1984 back injury to be twenty-five percent of the whole person.

In early October 1986 Huerta participated in a pain clinic that was scheduled for three weeks. Huerta completed only eight days of the program. The director of the clinic testified that Huerta was not motivated to do well in the program and voluntarily chose not to continue his participation. Huerta's wife testified that the staff of the clinic told her and Huerta that the evaluation was complete and that Huerta could leave if he wanted.

The hearing before the Commission to determine the degree of Huerta's disability was held beginning on October 22, 1986. The Industrial Special Indemnity Fund (ISIF) was also a party to this proceeding. During her testimony as a witness for Huerta, Montgomery suggested Ore–Ida and Dickinson Frozen Foods might have compatible employment for Huerta. She acknowledged that she had not placed injured workers with either of these employers and that she was not specifically aware of lifting, standing, sitting, or walking requirements of either employer. A report by Stewart was admitted in evidence indicating that he had made a labor market search in the Weiser and Payette areas and that he had located no positions that fell within Huerta's physical or educational limitations. Stewart testified as a witness for the surety at the hearing. He stated that there was employment available in the area of Huerta's residence that Huerta could perform. He suggested Ore–Ida and J.R. Simplot Company as potential employers. After two days of hearing, including rebuttal evidence by Huerta and his wife, Huerta rested his case. The surety was allowed twenty-eight days after the hearing to obtain depositions of two doctors and an investigator who had conducted video surveillance of Huerta.

In November 1986 the surety deposed Dr. Bills. Dr. Bills was shown a videotape of Huerta walking, driving, bending, stooping, and using a power saw and a hand saw to saw boards on a saw horse. After viewing the videotape Dr. Bills modified his opinion of Huerta's restrictions, stating that Huerta could lift and carry up to forty pounds occasionally and that he could crouch occasionally.

At the continuation of the hearing in January 1987 Huerta was allowed to present testimony in rebuttal to the videotape. Mrs. Huerta testified that on the day following the sawing that was depicted on the videotape Huerta experienced increased pain and remained in bed most of the day. She also was asked questions about Huerta's attempts to find employment with Dickinson Frozen Foods and Ore–Ida after the October hearing. The Commission sustained objections to this testimony on the ground that it was beyond the scope of proper rebuttal.

At the continuation of the hearing a consultant (Avila) from the Job Service of the Department of Employment in Payette testified for Huerta on rebuttal. Avila stated that she had met with Huerta and his wife approximately one month prior to the continuation of the hearing and had discussed with them employment possibilities with Ore–Ida. She received an application from Huerta for employment at Ore–Ida but considered his chances to be limited. She admitted that Job Services had been instructed by Ore–Ida to screen all applicants for employment to make sure that they did not have any back problems.

Based on the testimony of Montgomery and Stewart, the panel evaluation and the modified evaluation of Dr. Bills, the Commission found that Huerta was capable of performing light duty work or work at the lighter end of the medium category. The Commission also found that jobs within these categories were available within a reasonable area from Huerta's home. The Commission concluded that Huerta had not sustained his burden of proving that he fell in the odd-lot category or that he was totally and permanently disabled. The Commission found that Huerta suffers a partial permanent impairment of thirty percent of the whole person, with five percent attributable to his previous back surgery and five percent attributable to his knee problem, resulting in a permanent partial impairment of twenty percent of the whole

person causally related to the 1984 accident. Taking into account the pertinent nonmedical factors, the Commission ordered that Huerta had a permanent-partial disability of forty percent of the whole person. ISIF was dismissed as a party to the action.

Huerta has appealed from the decision of the Commission. He raises as issues on appeal the limitation of his rebuttal evidence at the continuation of the hearing and the decision of the Commission that he failed to sustain his burden of proving that he was an odd-lot worker.

## II.

### THE COMMISSION WAS WITHIN ITS DISCRETION IN LIMITING REBUTTAL.

Huerta asserts that in the January 1987 continuation hearing the Commission should not have limited Mrs. Huerta's testimony concerning Huerta's job applications at Ore–Ida and Dickinson Frozen Foods. We disagree.

While testifying on behalf of Huerta during the initial phase of the hearing in October 1986, Montgomery stated that light production work was available in the Weiser area at Dickinson Frozen Foods and at Ore–Ida. No evidence was presented that Huerta had sought employment with either of these employers. Huerta and his wife testified as rebuttal witnesses in the October hearing. Huerta's attorney stated that he had no further rebuttal. The Commission then continued the hearing in accordance with its rules for the taking of depositions. Huerta's attorney stated that he did not intend to take any further depositions. ISIF indicated that it intended to take no further depositions and renewed its motion to dismiss and for non-suit. ISIF argued in support of its motion that for Huerta to qualify for odd-lot treatment it was incumbent upon Huerta to show that he was unemployable. ISIF contended that Huerta had done nothing to seek employment other than attempting to obtain employment from the employer in this case. ISIF stated that the testimony in the hearing

had shown that there were jobs in the general area that Huerta could perform. The Commission took the motion under advisement and recessed the hearing.

When the hearing reconvened in January 1987, the depositions taken by the surety in the interim were admitted in evidence. Mrs. Huerta was then called as a witness for her husband. After she had testified about the circumstances portrayed in the videotape, Mrs. Huerta was asked:

Q. Now, at the earlier hearing, there was testimony received concerning possible employment for Juan at Ore–Ida and Dickinson Frozen Foods. Following that hearing, did you accompany your husband to either of those employers?

The ISIF and the surety objected on the ground that the information requested was outside the scope of proper rebuttal. The objection was sustained. The Commission then allowed Huerta to make an offer of proof of the testimony of Mrs. Huerta. During the offer of proof Mrs. Huerta testified as to what she and her husband had been told at Ore–Ida. An objection was made that this was hearsay. Mrs. Huerta also identified a letter from Dickinson Frozen Foods. An objection was made that this was also hearsay. The Commission sustained the objections.

The Commission's rules of procedure provide that after the submission of depositions following a hearing, "rebuttal evidence may be submitted by any party upon motion accompanied by a showing of the necessity for the presentation of such evidence." *Rules of Practice & Procedure Under Workmen's Compensation Law,* IX(c) (Rev.1985).

This Court has consistently held that proceedings in worker's compensation cases must be as summary as possible, but must be fair and do substantial justice to all parties involved. *Hite v. Kulhenak Building Contractor,* 96 Idaho 70, 72, 524 P.2d 531, 533 (1974). It is within the discretion of the Commission whether to allow rebuttal evidence at the continuation of a hearing following the submission of depositions. *Cf., Rosenberg v. Toetly,* 94 Idaho

413, 419, 489 P.2d 446, 452 (1971). We note that Huerta made no motion accompanied by a showing of the necessity, for the presentation of Mrs. Huerta's testimony, concerning the contacts that Huerta made with Ore–Ida and Dickinson Frozen Foods after the October 1986 hearing. In any event, the refusal to allow Mrs. Huerta's testimony was not an abuse of the Commission's discretion. If Huerta proposed to rebut Montgomery's testimony concerning the availability of employment for him, this was evidence that he should have presented at the October hearing. To the extent that Huerta proposed to rebut the testimony of Stewart concerning the availability of employment for him, he had that opportunity at the October hearing. Nothing in the depositions addressed the issue of available employment. The testimony of Mrs. Huerta concerning Ore–Ida and Dickinson Frozen Foods was not in rebuttal to anything in the depositions. The Commission did not abuse its discretion in rejecting the proposed rebuttal testimony of Mrs. Huerta.

### III.

### HUERTA DID NOT ESTABLISH A PRIMA FACIE CASE THAT HE WAS AN ODD–LOT WORKER.

Huerta asserts that he established a prima facie case that he was an odd-lot worker. We disagree.

This is not one of those cases where the claimant has made out a prima facie case as a matter of law, because "the evidence is undisputed and is reasonably susceptible to only one interpretation." *Lyons v. Industrial Special Indemnity Fund*, 98 Idaho 403, 407 n. 2, 565 P.2d 1360, 1364 n. 2 (1977). Here, the evidence of Huerta's employability was in dispute. Therefore, Huerta's burden of proof in attempting to establish a prima facie case of odd-lot status was to prove the unavailability of suitable work. *Gordon v. West*, 103 Idaho 100, 104–05, 645 P.2d 334, 338–39 (1982). Odd-lot status is a factual determination within the discretion of the Commission. We will sustain the Commission's finding on this issue, if it is supported by substantial competent evidence. *Kindred v. Amalgamated Sugar Co.*, 114 Idaho 284, 291, 756 P.2d 401, 408 (1988).

The nub of Huerta's position is that the testimony of Montgomery and Stewart did not establish that Huerta could have become employed, only that there was potential employment available for him. We reject Huerta's attempted distinction. It was Huerta's burden to bring himself within the odd-lot category. Whether he did so through his own testimony of his efforts to find employment, or whether he relied on the efforts of others on his behalf, the burden was his. Until he proved a prima facie case that he was an odd-lot worker, the burden to prove his employability did not shift to the surety and ISIF. *Gordon v. West*, 103 Idaho at 104, 645 P.2d at 338 (1982). The findings of the Commission indicate that Huerta did not carry this burden. There is substantial competent evidence to support these findings.

Huerta asks us to overrule *Gordon v. West* to the extent that it requires a showing that a claimant seeking odd-lot status has attempted other employment. We decline to follow this suggestion. However, we do consider it appropriate to clarify what efforts are necessary to fulfill the burden established by *Gordon*.

In *Gordon* the Commission found that the claimant was not capable of performing the physical activities required for driving a truck, the job he had at the time of his injury. This Court concluded that the evidence did not establish as a matter of law that the claimant "was probably unemployable in any occupation, as was the situation in *Lyons.*" 103 Idaho at 104, 645 P.2d at 338 (1982). We held that it was the claimant's burden under those circumstances "to prove the unavailability of suitable work in attempting to establish his alleged total disability." *Id.* We pointed out that the claimant's efforts to obtain employment after his injury were directed toward truck driving but that the pain he suffered while attempting to drive a truck caused him to cease these efforts. We noted that the record did not disclose "that *Gordon* attempted to obtain or was denied any other

suitable employment which he might be capable of performing." *Id.* It was with this background that the Court in *Gordon* then set the standard to which Huerta objects:

A claimant must do more than assert that he cannot perform his previous type of employment in order to qualify as an "odd-lot" worker. As in the *Lyons* case, he must show what other types of employment he has attempted. The commission, as the factfinder, must consider whether the claimant has tried and could not perform *other* work. In the absence of such a showing, claimant failed to establish that there was no suitable occupation available to him. (Emphasis in original.)

103 Idaho at 104–05, 645 P.2d at 338–39.

The reference in *Gordon* to *Lyons* as a case in which a claimant asserting odd-lot status was required to show what other employment he had attempted is puzzling. There is no reference in *Lyons* to other types of employment that the claimant had attempted. In *Lyons*, after noting that it was undisputed that the claimant could not perform the heavy manual labor which had been his employment before his injury, the Court stated that if the claimant were employable at all "it must be at some type of light work." *Lyons*, 98 Idaho at 406, 565 P.2d at 1363 (1977). The only reference to light work in the opinion is the comment that the claimant lived "in a small mountain community where the opportunities for light work are limited." 98 Idaho at 407, 565 P.2d at 1364. The next statement in the opinion is: "Therefore, [ISIF] must show that some kind of suitable work is regularly and continuously available to [the claimant]." *Id.*

Although *Lyons* was not authority for the requirement set forth in *Gordon* that a claimant who is seeking odd-lot status must show what other types of employment he has attempted, its companion case issued a week later and that directly follows *Lyons* in the *Idaho Reports* is authority for this requirement. *Francis v. Amalgamated Sugar Co.*, 98 Idaho 407, 565 P.2d 1364 (1977). In *Francis* this Court noted that

the claimant testified that he had been unable to do the moderate to heavy lifting necessary for performance of his former work. After stating that the claimant had not found permanent employment, the Court said: "He has discontinued the types of employment that he has attempted which involved bench or chair work because he has experienced pain in his lower back and legs after prolonged sitting." 98 Idaho at 409, 565 P.2d at 1366. In retrospect, it was *Francis* and not *Lyons* that should have been cited in *Gordon* for the requirement that there be a showing of other types of employment that had been attempted. In *Francis* the Court considered "the testimony concerning [the claimant's] potential for finding work that he can perform" as one of the circumstances that caused the Court to conclude as a matter of law that the claimant had made out a prima facie case that he should be an odd-lot worker. *Id.* This statement appears to refer to the claimant's attempts to perform other types of employment.

In *Nielson v. State Industrial Special Indemnity Fund*, 106 Idaho 878, 881, 684 P.2d 280, 283 (1984), this Court pointed out in sustaining the Commission's finding of odd-lot status that although the claimant had not attempted other types of employment, he had sought employment unsuccessfully. This provides another means by which a claimant may satisfy the burden of proof set forth in *Gordon*.

In *Bell v. Clear Springs Trout Co.*, 107 Idaho 568, 691 P.2d 1183 (1984), the claimant asserted that after two years of diligent effort, he was unable to secure regular and steady employment. He contended that the unavailability of an actual job for more than two years placed him in the odd-lot category. The findings of the Commission stated: " 'The claimant testified that in the period shortly before the hearing, he had been engaged in bar tending on a part-time basis. He also had been self-employed selling firewood which other individuals had cut for him. He had two short-term jobs which he was unable to retain.' " 107 Idaho at 570, 691 P.2d at 1185 (1984). The Commission found that the claimant had failed to sustain his burden of proving

that he was an odd-lot worker. After noting that the burden was on the claimant to establish a prima facie case of odd-lot status, this Court concluded: "Although the evidence in this case is conflicting, the Commission's findings in this matter are supported by substantial and competent evidence and will not be disturbed on appeal." 107 Idaho at 571, 691 P.2d at 1186 (1984). This makes it clear that it is not just any efforts that will suffice to establish a prima facie case as an odd-lot worker. This Court has deferred to the Commission, so long as there is substantial and competent evidence to support the Commission's decision on this issue.

■ There is evidence in the record here that there was employment available for Huerta that he was capable of performing. In establishing a prima facie case as an odd-lot worker, it was Huerta's burden to prove the unavailability of suitable work. Huerta could have carried this burden by showing that he had attempted other work that he was capable of performing, or that he had searched for other work, and it was not available. It would have been sufficient for Huerta to have proved that he had used vocational counselors, employment agencies, or the Job Service to conduct searches for other employment. However, we leave to the Commission the weighing of the evidence produced by the claimant. We will not participate in weighing the evidence concerning the availability of employment, except to apply the substantial competent evidence rule.

We have also held that a claimant may be relieved of the burden of proof required in *Gordon*, if his efforts to find suitable employment would have been futile. *Carey v. Clearwater County Road Dept.*, 107 Idaho 109, 113, 686 P.2d 54, 58 (1984). Here, the Commission did not find that efforts by Huerta to find suitable employment would have been futile. Instead, the Commission found there were jobs available for Huerta within the categories that he was capable of performing. There was substantial competent evidence to support this finding, and we affirm the Commission's decision that Huerta did not establish a prima facie case that he was an odd-lot worker.

## IV.

### CONCLUSION.

We affirm the order of the Commission awarding Huerta permanent partial disability of forty percent of the whole person and dismissing ISIF as a party to the action.

Costs to respondents.

No attorneys fees on appeal.

SHEPARD, C.J., and BAKES, J., concur.

BISTLINE, Justice, dissenting.

In his opinion Justice Johnson has made a careful review of the *Lyons* and the *Francis* cases. Those two cases were the first applications of the odd lot doctrine in the history of Idaho compensation jurisprudence. *Lyons* was so accredited by the Industrial Commission in its decision in Mr. Huerta's case:

The Idaho Supreme Court first addressed the odd-lot doctrine in the case of *Lyons v. Industrial Special Indemnity Fund*, 98 Idaho 403, 565 P.2d 1360 (1977). In that decision the Court said that to be an odd-lot worker an injured employee must be so handicapped that they will not be employed regularly in any well-known branch of the labor market—absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on their part. The burden of proving that a worker falls into the odd-lot category is upon the claimant. Once the claimant has made a prima facie showing of odd-lot category, the burden shifts to the employer to show that suitable work is regularly and continuously available to the claimant. *Rost v. J.R. Simplot Company*, 106 Idaho 444 [680 P.2d 866] (1984).

It is with a sense of long overdue gratification that I read in Justice Johnson's opinion (at 48, 773 P.2d at 1135), "that the reference in *Gordon* to *Lyons* ... is puz-

zling." It is to be noted that, as was painstakingly pointed out in my opinion in *Horton v. Garrett Freightlines*, 115 Idaho 912, 772 P.2d 119 (1989), that able counsel who presented claimant's case in *Lyons* was one of the three leading members of the compensation bar who were on the committee which drafted the complete recodification of the worker's compensation law. Representing the surety in that case was another of the three attorneys, and, representing the amicus was the third. Similarly, in *Gordon* there were highly reputed counsel representing the three parties.

The puzzlement experienced by Justice Johnson may be, perhaps, explained as he sees it, *i.e.*, a mistaken reference to *Lyons* whereas the writer surely must have intended to write *Francis*, but, it is better explained by observing that, depending on the luck of the draw, any given appeal in a compensation case will be handled differently.

First, it will be noted that Justice Bakes authored the *Gordon* opinion for the Court. Second, it will be noted that in *Francis* this Court held in two places—in that short opinion—that "... this claimant falls in the odd lot category, ..." 98 Idaho at 409, 565 P.2d at 1366, and "... we conclude as a matter of law that the claimant has made out a *prima facie* case that he should be placed in the odd lot category." 98 Idaho at 409, 565 P.2d at 1366. Moreover, consider this language from Justice Donaldson's *per curiam* opinion:

> The Commission's recitation that it has considered medical and non-medical factors including 'the claimant's age, sex, education, economic and social environment and training and usable skills,' in concluding that he is only 25% disabled is not a substitute for an explicit finding of what kind of suitable work is available to the claimant who is in the odd lot category. Indeed, after the Industrial Commission issued its order in this claim, the claimant petitioned the Commission to make 'a specific Finding of Fact as to what avenues of gainful employment are at present open to the claimant and whether a reasonably stable labor mar-

ket now exists for claimant's services in such employment,' but the Commission denied this request on the ground that 'specific findings of fact relative to avenues of gainful employment open to the claimant and the labor market are not necessary for the adjudication of this matter.' But, as *Lyons* makes clear, this is precisely the kind of finding the Commission must make when the claimant falls into the odd lot category. Accordingly, the matter is remanded to the Industrial Commission for further findings. Costs to appellant.

*Francis v. Amalgamated Sugar Co.*, 98 Idaho 407, 409–410, 565 P.2d 1364, 1366 (1977). Returning to Justice Bakes' *Gordon* opinion, it is not unusual for him to rule in compensation cases, as he did there, that:

> The crucial issue on appeal in this case is whether there was substantial competent evidence to sustain the commission's finding that after December 24, 1977, claimant's permanent disability caused by the 1977 accident did not exceed his permanent impairment rating of 15% of the whole man.
>
> Our review of Industrial Commission findings of fact is limited in scope by Idaho Const. art. 5, § 9, and I.C. §§ 72–724, and –732. 'This Court only has authority to reverse a decision of the commission when its findings are unsupported by "any substantial competent evidence," I.C. § 72–732(1), or are not supportable as a matter of law, Idaho Const. art. 5, § 9.' *Curtis v. Shoshone County Sheriff's Office*, 102 Idaho 300, 303, 629 P.2d 696, 699 (1981); *Sykes v. C.P. Clare & Co.*, 100 Idaho 761, 605 P.2d 939 (1980); *Paulson v. Idaho Forest Industries, Inc.*, 99 Idaho 896, 591 P.2d 143 (1979).

*Gordon v. West*, 103 Idaho 100, 102–03, 645 P.2d 334, 336–37 (1982).

Following this stock statement of the standard of review, Justice Bakes recited some of Gordon's physical problems. He then *properly* set out on page 103 of 103 Idaho, page 337 of 645 P.2d the *Lyons* rule for gaining access into the odd lot catego-

ry. Finally, after noting that "The burden of proving availability of regular employment within the claimant's capabilities shifts to the employer only when the claimant makes a *prima facie* case that he is in the odd lot category," Justice Bakes concluded with the punch line and the *implicit* holding, wholly *ipse dixit*, of the *Gordon* case, namely:

THEREFORE, IT REMAINED THE BURDEN OF *MR. GORDON* TO PROVE THE UNAVAILABILITY OF SUITABLE WORK....

Hopefully, on reconsideration Justice Johnson will be convinced that Justice Bakes' did not inastutely refer to *Lyons* when he meant to write *Francis*. *Lyons* was the new case law, and *Francis* was, plain and simple, based on the same holding. *Gordon* was a way to get around *Lyons*, i.e., "Don't write that claimant in *Gordon* failed to make a *prima facie* case, just *imply* that he didn't."

When it comes to being puzzled, I, too, was puzzled, and not later, but at the time. A footnote to my opinion bears that out:

The Court does cite *Lyons* for the general propositions of law contained therein, but at no point does it distinguish either *Lyons* or *Francis*. The Court's failure to explain why the result in this case is different than that reached in *Lyons* and *Francis* may indeed *puzzle* the trial bench and the Commission.

103 Idaho 100, 105, n. 1, 645 P.2d 334, 339, n. 1. Not content to so write, as a bare assertion, I analyzed each case:

In *Francis*, the Court held that the following facts established as a matter of law that the claimant had made out a *prima facie* case that he should be placed in the odd lot category:

The claimant in this case has the equivalent of a twelfth grade education. He is now in his mid-forties. His work history has been in construction or heavy equipment repair and has always involved heavy lifting. However, since the time of the industrial accident he testified that he has been unable to do the moderate to heavy lifting necessary for performance of

his former work. Since that time he has not found permanent employment. He has discontinued the types of employment that he has attempted which involved bench or chair work because he has experienced pain in his lower back and legs after prolonged sitting. His efforts at vocational rehabilitation have not been successful. A Department of Employment job counselor testified upon the claimant's behalf that there was no stable labor market for the type of work that the claimant could perform, although he did not preclude the possibility that the claimant might be retrained for work in other fields. 98 Idaho at 409, 565 P.2d at 1366.

Similarly, in *Lyons* the Court relied on the following evidence to conclude as a matter of law that the claimant fell within the odd lot category:

He is a 48-year-old male with a ninth grade education. His vocational training and skills are confined solely to heavy manual labor, which he can no longer perform. As a result of his injuries, he experiences almost constant pain in both of his legs, his left arm, and the cervical, thoracic, and lumbar areas of his spine. He testified that the pain increases if he either sits in one place or walks around for any length of time. Appellant is also restricted in his ability to lift objects and to use his arms. He lives in a small mountain community where the opportunities for light work are limited. Therefore, *the Fund must show that some kind of suitable work is regularly and continuously available to appellant.* 98 Idaho at 407, 565 P.2d at 1364 (emphasis added).

Quite evidently, the Court has simply avoided any attempt at distinguishing the indistinguishable. In fact, Mr. Gordon is at a significantly more advanced age than claimants Lyons and Francis. He is, on the record, a 57-year-old male with the equivalent of a high school education. He was employed as a lumber truck driver from approximately 1946 until January 8, 1976—the date of the acci-

dent. As a result of the accident, he experiences almost constant pain in his left arm and shoulder. Since the time of the accident he has been unable to return to his former employment because he cannot pass the physical examination necessary to receive a card from the Interstate Commerce Commission. He has not been able to find other permanent employment. He has had to discontinue the employment he has attempted because of the physical difficulties and pain that resulted. [footnote omitted] Mr. Gordon is restricted in his ability to lift objects and to use his arm. He lives in a small mountain community (Sandpoint) in which the opportunities for light work are, without doubt, limited. He was turned away by the employment office when he sought vocational rehabilitation.

*Gordon*, 103 Idaho at 105–107 Footnote 2, 645 P.2d at 339–341 Footnote 2. Footnote 2 amplified on the dire straits which Mr. Gordon was in:

As the Court notes, Mr. Gordon attempted to work as a truck driver following the accident—the only skill the record reveals Mr. Gordon possesses. Mr. Gordon testified that he tried to work for L.C. Walson on two different occasions. The first job was driving a belly dump truck hauling crushed gravel, a job which obviously did not require the same level of exertion as driving a log truck, since there were no binders or cables to put on. When asked why he did not continue with the job, Mr. Gordon stated: 'I couldn't rest—I couldn't do the job ten hours a day.' Mr. Gordon also testified that he tried hauling logs for L.C. Walson, and that at the most he worked twenty total. He testified: 'I was limited. I could haul the logs but I couldn't do anything with the wrappers or binders.' He stated that all he did was drive and that somebody else loaded and unloaded the logs. He also stated that during the twenty days he worked he made 'maybe one trip one day and maybe two the next.' That compares with five or six trips a day that Mr. Gordon testified that he made before the

accident in question. When questioned as to why he was not still hauling logs for Mr. Walson, the following exchange took place:

A. I can't cut it, couldn't do it.

Q. What do you mean, you can't cut it; what happens?

A. Well, as a gypo, you have to— it's a young man's job, I'll put it that way. I just can't keep up with them.

Q. Did it cause you any physical difficulties?

A. My neck was burned so bad, I would have to stop and my arm would go numb.

Mr. Gordon also stated that his arms would go numb when he was driving and that he could drive two hours at the most without seeking relief. He stated that he would have to '[p]ull over and stop, walk around. If I could leave one arm down, it would come back to life and leave the other one on the wheel, but you can't do that and shift.'

Mr. Gordon testified that L.C. Walson was a friend of his and that he had worked for Walson before. In *Lyons*, the Court in discussing workers in the odd lot category stated: 'While they are physically able to perform some work, they are so handicapped that they will not be employed regularly in any well-known branch of the labor market—absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on their part.' 98 Idaho at 406, 565 P.2d at 1363.

In this case, the fact that Mr. Gordon attempted to do some work of a less physically demanding nature does not indicate that he is able to return to work, especially when the record demonstrates that the opportunities were provided by a friend and that Mr. Gordon was not able to fulfill the requirements because of the physical difficulties that resulted.

*Gordon*, 103 Idaho at 106, 645 P.2d at 340.

My dismay in the *Gordon* case was not so much with Justice Bakes' style of writing as it was with how readily three other members of the Court joined it—which was

then not uncommon—but how steadfastly they adhered to it with not a single comment by way of response. Even Justice Bakes conceded in his opinion that Gordon was no longer capable of driving a truck.

In the case at bar, in contrast to *Gordon,* we have a majority opinion which does thoroughly and fairly present the history of the case and the pros and cons of the issues. In short, it is an opinion which I could very well join except for one proposition—which is that of precluding Mrs. Huerta from testifying to admissible evidence which was presented by way of an offer of proof. That, of course, is in addition to declining to join an opinion which purports to correct the *Gordon* opinion and then accept it as an authority which sustains placing the burden of proving on Huerta that there is no available work for Huerta.

I cannot subscribe to the proposition that Huerta loses because "the Commission did not find that efforts by Huerta to find suitable employment would have been futile" (majority op., at 49, 773 P.2d at 1136). Otherwise worded, to say that is to say that "the Commission found Huerta's efforts would have been successful," which is very *nearly* what the Commission did write in Finding XII:

> Based upon the testimony of Ms. Montgomery and Mr. Stewart, together with the panel evaluation and the evaluation of Dr. Bills given after review of a video tape of Claimant, the Commission finds that Claimant is capable of performing light duty work or work at the lighter end of the medium category as defined by the Dictionary of Occupational Titles. The Commission also finds that jobs within these categories are available within a reasonable area from Claimant's home and that Claimant is not totally and permanently disabled.

The precluded testimony of Mrs. Huerta, if considered, would have precluded the Commission from finding such light duty work available to Huerta.

I do not disagree that it was within the Commission's discretion whether to allow Mrs. Huerta to testify, but I cannot see

that the Commission heard the testimony as an offer of proof—and *then precluded it.* A discretion wisely used would have readily allowed it in the first place. *Sheets v. Agro–West, Inc.,* 104 Idaho 880, 664 P.2d 787 (Ct.App.1983). The objections were highly technical. Moreover, one cannot readily overlook the Commission's more relaxed attitude in favor of the employer in *Frank v. Bunker Hill Co.,* S.Ct. No. 16595, Idaho, 1988 Opinion No. 37, filed May 24, 1988.

We are not reviewing a tort personal injury action tried to a jury in the courtroom of a district court. Rather we are reviewing a ruling made by an administrative body. We are reviewing a proceeding which was at one time thought to be aimed at doing away with all the technical niceties which attend to tort actions where the outcome of the contest is more often dependant upon attorney v. attorney. We are reviewing a proceeding where use of attorneys, though it may be helpful, was thought to be aimed mainly at providing sure and certain relief to injured workers and their families.

I strongly disagree with Justice Johnson's characterization of the proceedings when Mrs. Huerta was on the stand in January 1987. While he correctly portrays that the question propounded, set forth in Justice Johnson's opinion, at 46, 773 P.2d at 1133, was objected to as improper rebuttal, the Commission allowed an offer of proof. It was made by a continuation of Mrs. Huerta's sworn testimony, *to which no objection was made,* and also by having a letter of December 8, 1986, marked for identification as Exhibit 29, and offered as such. *This* exhibit was objected to as hearsay, with both attorneys Hoff for ISIF and Wetherell for surety objecting. That objection was sustained.

As to the sworn testimony, however, no objection as such was made by either. After some of the testimony was presented, Mr. Wetherell almost made an objection, but did not. He stated only this: "Your Honor, I would like to reiterate the [former] objection [improper rebuttal] on another basis, given the progress of the testi-

mony and that basis is hearsay. This is clearly not direct testimony from Ore–Ida. But Mr. Uranga can certainly continue his offer of proof." Attorney Hoff said nothing. At the conclusion of Mrs. Huerta's testimony, attorney Hoff made an objection, joined in by Mr. Wetherell, directed at the *letter* only:

> Ms. Hoff. *It* may be an offer of proof, but I would object to the admission of *it* even under offer of proof because *it* constitutes hearsay. *This* is a letter from Dickinson Frozen Foods.

So, the letter was excluded on the grounds of hearsay. It is attached hereto as Exhibit A, and speaks for itself. Clearly it was aught but documented corroboration of Mrs. Huerta's testimony. It was not offered as evidencing the truth of its contents, which was not an issue, but to corroborate her testimony establishing Huerta's attempt to find work at the two Weiser plants which they had been told about—a classic example of an exception to the hearsay rule.

My concern is not with the whys and wherefores as to the late development of this evidence, but obviously Mrs. Huerta could not have testified earlier in October 1986 to an episode which did not take place until December 1986. And, after all, this was *not* a court proceeding, but instead was a worker's attempt to get his whole case before the Commission. His attorney may or may not have been at fault. But, again, such proceedings are supposed to be informal, and in fact so much so, that workers without attorneys should still prevail when the facts are with them.

Query: Have we gone so far the other way that we now penalize the worker for what his attorney may or may not have done exactly like it would be in a district court personal injury action? The question is based on the assumption that such is the basis of the majority holding that the testimony given on the offer of proof is of no effect.

The only proper resolution of this case is to vacate the findings, conclusions, and award of the Commission and remand for reconsideration which will include the testimony of Mrs. Huerta and Exhibit 29.[1] The Commission should be at liberty to entertain a request by ISIF and the surety to

---

1. The most recent case where this Court saw need to remind itself, the trial bar, and the Commission that administrative proceedings are not trials is *Hite v. Kuhlenak Building Contractor*, 96 Idaho 70, 524 P.2d 531 (1974), where the Court pointedly stated:

   [W]e do not feel that the Industrial Commission should be, or is, governed by the same rules of evidence as courts of law. The legislature, when it created the commission, intended that proceedings before it should be as summary, economical, and simple as the rules of equity would allow. I.C. § 72–601. As stated in *Duggan v. Potlatch Forests, Inc.*, 92 Idaho 262, 263, 441 P.2d 172, 173 (1968):

   Proceedings under the Workmen's Compensation Law are designed to afford employees a speedy, summary, and simple remedy for the recovery of compensation for injuries sustained in industrial accidents and *are not governed so strictly by evidentiary and procedural rules as applied in courts of law.* I.C. § 72–601; *Walker v. Hogue,* 67 Idaho 484, 185 P.2d 708 (1947); *Pierstorff v. Gray's Auto Shop,* 58 Idaho 438, 74 P.2d 171 (1937); *Feuling v. Farmer's Co-op. Ditch Co.,* 54 Idaho 326, 31 P.2d 683 (1934); *Kelley v. Prouty,* 54 Idaho 225, 30 P.2d 769 (1934). However, the procedure of the Board must be "as far as possible in accordance with the rules of equity." I.C. § 72–601.

   By rules of equity, the statute means that although the proceeding must be as summary as possible, *it must still be fair and do substantial justice* to all parties involved. *In re Bones,* 48 Idaho 85, 280 P. 223 (1929); *Pierstorff v. Gray's Auto Shop,* 58 Idaho 438, 74 P.2d 171 (1937).

   In order to insure that the proceedings are kept simple, economical, and summary, the legislature established a procedure whereby claims could be heard by an administrative agency that possessed sufficient expertise to competently weigh the evidence and make a speedy, just determination. *Walker v. Hogue, supra. If the Industrial Commission was required to follow all of the rules of evidence and procedure found in courts of law,* then to some extent at least, *the intent of the legislature* to provide for summary dispositions of claims *would be frustrated and proceedings before the Commission would tend to become expensive and protracted affairs.* The legislature therefore must have intended that the commission should have the discretionary power to consider any type of reliable, trustworthy evidence having probative value in the area of disability rating, even though that evidence may not be admissible in a court of law.

address the exception to the hearsay rule. The Commission at reconsideration should be directed to consider the testimony of Linda Avila,[2] an employer of the state of Idaho, Department of Employment, Payette Office, classified as a Senior Job Service Consultant. There was an arrangement between her office and Ore–Ida whereunder Miss Avila did the job screening for Ore–Ida, "We prescreen applicants and make sure that they have no back problems or allergies." Tr., p. 334. In one sentence she verified that Mr. and Mrs. Huerta called on her regarding employment at Ore–Ida. Asked if she was aware that Mr. Huerta had previous back operations, she answered, "At that point when *he* came in *they* told me about it." Tr., p. 333. Justice Johnson acknowledged that Linda Avila was a witness and what she said—which was in corroboration of the Huerta testimony that Huerta had applied for work in the Payette area. But, the Commission's written decision did not give Linda Avila any mention whatsoever.

What does not surface in Justice Johnson's opinion is that this is one of the rare cases which we see where the parties presented their evidence to the Commission in the first instance—rather than to a ref-

eree. Apparently the case was considered of more than usual moment. With ISIF having been made a party at the outset, it would be recognized that the claimant's case was aimed at establishing total and permanent disability.

The case was presented to commissioners Geddes and Sirhall, and apparently the third commissioner, Defenbach, participated only in adopting the decision which became that of the full Commission, as noted by it being signed by all three commissioners. Mr. Defenbach is the one commissioner who by law is required to be "an attorney at law duly licensed to practice in this state." I.C. § 72–501(4). Nothing in the statute precludes the other two commissioners from also being attorneys, but, historically, including the present instance, they have not been attorneys. The transcript of the hearing, with Mr. Geddes presiding, shows some indication that counsel opposing Huerta's claim, Mr. Wetherell for the surety, and Gunn and Hoff for the ISIF, were perhaps beleaguering Mr. Geddes with technical objections which they necessarily had to know were such.

**HUNTLEY, J., concurs.**

---

**2.** In Part I of his opinion, BACKGROUND AND PRIOR PROCEEDINGS, Justice Johnson established his conversancy with the appeal record by acknowledging the testimony of Linda Avila as a claimant's witness (Maj. Op., at 45, 773 P.2d at 1132). He did not, however, further mention her testimony, nor did he mention that

the Commission's decision either ignored or overlooked her testimony. Yet, if there were any doubt on the validity of Mrs. Huerta's testimony at the January 1987 hearing, the Avila testimony readily dispels it, and hence was critical to a proper evaluation of claimant's case.

56

EXHIBIT A

# DICKINSON FROZEN FOODS, INC.

P.O BOX 'G     601 N.W 21st STREET    FRUITLAND, IDAHO 83619

(208) 452-5200

RECEIVED

DEC 1 0 1986

December 8, 1986

CLAIMANT'S
EXHIBIT
21

TO WHOM IT MAY CONCERN:

At the present time, we have no openings. As far
as the future is concerned, we will only be hiring
on a replacement basis.

In reference to Mr. Juan Huerta: Mr. Huerta has an
application on file with us, along with 1500 other
applicants. Our present working force is approximately
100. We do not foresee hiring additional work force.

If you have any further questions, please call.

Sincerely,

Kit Kamo
Administrative Assist.