565 P.2d 1360

**George J. LYONS, Claimant-Appellant,**

v.

**INDUSTRIAL SPECIAL INDEMNITY FUND, State of Idaho, Defendant-Respondent.**

No. 12037.

Supreme Court of Idaho.

June 16, 1977.

George A. Greenfield of McClenahan & Greenfield, John F. Greenfield, Boise, for claimant.

Samuel Kaufman of Anderson, Kaufman, Anderson & Ringert, Boise, amicus curiae, for appellant.

Robert C. Youngstrom, Spec. Asst. Atty. Gen., Boise, for respondent.

John W. Barrett of Moffatt, Thomas, Barrett & Blanton, Boise, amicus curiae, for respondent.

DONALDSON, Justice.

On June 21, 1974, the appellant George J. Lyons filed an application requesting a hearing before the Industrial Commission. He claimed that he was totally and permanently disabled for all gainful employment following an injury on September 22, 1972, while employed by A & T Logging Company. Upon motion by A & T Logging Company and its surety, Argonaut Northwest Insurance Company, the Industrial Special Indemnity Fund[1] was made a defendant in the proceedings.

On December 17, 1974, a hearing was held by the Commission with the appellant being the only witness. In addition, medical reports of six doctors who had treated or examined the appellant were admitted into evidence. Prior to a decision, a lump sum settlement for partial permanent disability was agreed upon by the appellant and A & T Logging Company and its surety. The employer and its surety were then dismissed as parties to the proceeding leaving only the Fund as a defendant. The central issue remaining in dispute was whether the appellant was totally and permanently disabled after his September 22, 1972, injury. The Commission found, based upon the medical reports, that he was not, and Lyons challenges this finding on appeal asserting that there was substantial, competent evidence requiring a finding in his favor.

The record discloses that appellant Lyons is a 48 year old male with a ninth grade education whose entire labor history consists of nothing but heavy manual labor. In 1942 he went to work in the shipyards cutting iron with an acetylene torch. During the summers between 1942 and 1945, appellant worked in Idaho as a manual laborer on a road crew for the United States Forest Service. In 1945, he moved to Idaho permanently, locating in the Kooskia area where he worked in the lumber industry setting choker, pulling green chain, driving caterpillar tractor, driving truck, and working as a sawyer. In 1951, appellant moved to the Riggins area where he continued working in the lumber industry until a series of accidents, specifically detailed below, forced him to seek vocational rehabilitation in 1961. Following his vocational training, appellant worked periodically in a body shop in Orofino, Idaho, in addition to continuing work in the lumber industry. This arrangement continued from 1961 until his final injury in 1972. Appellant has no special training or skills other than his vocational training in body shop work.

Appellant, obviously a man of star-crossed fortune, has had a long succession of injuries throughout his life. At age 7, he lost his thumb in an accident with a saw. Industrial noise encountered over the years has led to a binaural hearing impairment. In addition to the 1972 injury to his back which led to the filing of this claim, appellant suffered three other back injuries while working for the logging industry. He also reinjured his back while working in the Orofino Body Shop. Appellant fractured his left leg twice which finally led to the insertion of a three inch screw for support. He also fractured his right leg in the same accident that injured his lower back in

1. By virtue of I.C. § 72–332 the Fund can become liable for compensation benefits whenever an employee with an existing permanent physical impairment becomes totally and permanently disabled due to an injury arising out of and in the course of his employment. The total and permanent disability must be the result either of the combined effects of the preexisting impairment and the subsequent injury, or of the aggravation and acceleration of the preexisting impairment by the subsequent injury. In such cases the employer and its surety are liable for compensation benefits only for the disability caused by the subsequent and last injury. The Fund pays the remainder of the benefits to which the employee is entitled by reason of his total and permanent disability.

1959 when he slipped off a logging truck. In two separate instances appellant damaged each of his eyes, his right eye when he was struck by a flying piece of bush and his left eye which was pierced by a piece of steel while working at the Orofino Body Shop. Additionally, appellant testified that he suffered permanent lung damage from smoke inhalation while fighting a forest fire in 1967. Appellant's string of misfortune finally culminated on September 22, 1972. While driving a logging truck for Alpine Construction Co., later known as A & T Logging, Inc., he found it necessary to put chains on his truck in order to traverse a muddy road. The chain hangers were so high on the truck that he was forced to make a small jump to rehang the chains and in doing so he felt a sharp pain in his back, as though "somebody hit me right between the shoulders with a sledge hammer." Since that time appellant states he has been unable to work at all due to the almost constant pain he is experiencing in his legs, back and left arm.

Appellant's five back injuries involved different areas of the spinal column. The three areas involved are the cervical spine (the seven vertebrae in the neck), the thoracic spine (the twelve vertebrae in the upper back), and the lumbar spine (the five vertebrae in the lower back). Appellant's first back injury damaged his lumbar spine, and the last damaged his cervical spine. Although the record is unclear as to his other three back injuries, the second also apparently involved his cervical spine, and the fourth, which occurred in the Orofino body shop, involved either his lower thoracic or upper lumbar spine.

Following his last injury, the record shows that appellant was examined by six different doctors, five of whom examined his back. At the request of the Argonaut Northwest Insurance Company, appellant was examined by Dr. Kuykendall, a Boise neurologist. After evaluating appellant's "rather multiple complaints," Dr. Kuykendall concluded there was no nerve damage to appellant's cervical spine and no recurrent problem with his lumbar spine. He diagnosed appellant's cervical injury as

merely a strain and suggested a disability rating of "20 per cent loss of the left upper extremity at the shoulder." Dr. Baranco, a Caldwell orthopedic specialist, examined appellant's lumbar spine and gave him a disability rating, "relating solely to the lumbar spine, of approximately 16% loss of the whole man." Appellant's cervical spine was examined by Dr. Stewart, a Seattle orthopedic specialist. After performing a myelogram upon appellant which showed extensive degeneration of a cervical disc, Dr. Stewart rated appellant's disability due to the cervical injury at 25% of the whole man.

Dr. Thorson, a Lewiston orthopedic specialist, treated appellant for his 1972 injury on six different occasions during a period of approximately one year. He also concluded that appellant had injured a cervical disc but felt that the disability based upon the cervical injury was equivalent to "75% loss of the upper extremity at the shoulder." Dr. Thorson noted that appellant "is considerably hampered from his normal occupation and will probably remain so." He added that appellant "cannot tolerate lifting, twisting, sustained driving, or much heavy use of the arms at all." Dr. Kale, a Grangeville osteopath who was appellant's personal physician, saw appellant over ninety times during the period from April 1972 until December 1974. In his report he concluded:

"His [appellant's] ability to work is nil and I cannot see any improvement that may work out in the future. * * *

"He is substantially disabled at this point for gainful work. I do not expect this condition to resolve as far as I can see."

In addition, appellant testified that he was contacted by representatives of the vocational rehabilitation program after his last injury. They advised him that there was no hope of retraining him for another occupation. This testimony was uncontroverted.

The Commission found that the 1972 injury to appellant's cervical spine was not totally disabling. It relied heavily upon the

opinion of Dr. Stewart that the cervical injury would not prevent appellant from working at bench level as long as he did no heavy lifting or overhead activities. It also noted that the pre-1972 injuries were not disabling because appellant had engaged in gainful employment after each of them. The Commission then apparently concluded that since the 1972 injury was not by itself totally disabling, and since the pre-1972 injuries had not been disabling in the past, the appellant was not totally and permanently disabled. This piecemeal evaluation of appellant's injuries is unacceptable.

■ An evaluation of total disability requires an appraisal of the claimant's *present* and probable *future* ability to sell his services in a competitive labor market. I.C. § 72–425. Prior to 1972 the appellant's employment history consisted entirely of heavy manual labor. It is undisputed that he cannot perform such jobs in the future and that if he is employable at all it must be at some type of light work. An injury, such as the loss of his thumb, which did not materially inhibit him prior to 1972 may be a significant impediment in the future if, for example, the only available light work requires the full use of both hands. Furthermore, the effect of successive injuries may be greater than the sum of the impairments resulting from each. The Commission must therefore evaluate appellant's ability to find employment in the future after considering all of his physical impairments, not just the most recent one.

In addition to the medical factor of permanent impairment, the Commission must also consider nonmedical factors such as age, sex, education, economic and social environment, training, and usable skills. I.C. § 72–425. The Commission's approach in this case does not adequately consider the effect of these nonmedical factors on appellant's ability to obtain employment. Appellant has a ninth grade education and no special training or skills. His primary vocational asset was his ability to perform heavy manual labor. While his lack of formal education, special training, and usable skills did not prevent him from working in

the past, it will undoubtedly lessen his chances of finding employment in the future. At best, appellant can only offer a prospective employer the ability to perform unskilled light work of a highly restricted nature. His position differs from that of someone such as an accountant who would still have valuable skills to offer an employer in spite of a substantial physical handicap.

■ It is not necessary for a person to be physically unable to do anything worthy of compensation to be classified as totally disabled.

"An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled." *Arnold v. Splendid Bakery,* 88 Idaho 455, 463, 401 P.2d 271, 276 (1965).

Claimants such as those described in the above quotation from *Arnold* are often classified as "odd-lot" workers. See 2 A. Larson, The Law of Workmen's Compensation § 57.51 (1976). While they are physically able to perform some work, they are so handicapped that they will not be employed regularly in any well-known branch of the labor market—absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on their part.

■ If the evidence of the medical and nonmedical factors places a claimant *prima facie* in the odd-lot category the burden is then on the employer, the Fund in this case, to show that some kind of suitable work is regularly and continuously available to the claimant. *Employers Mut. Life Ins. Co. v. Industrial Comm'n,* 25 Ariz.App. 117, 541 P.2d 580 (1975); *Transport Indem. Co. v. Industrial Accident Comm'n,* 157 Cal. App.2d 542, 321 P.2d 21 (1958); *Brown v. Safeway Stores, Inc.,* 82 N.M. 424, 483 P.2d 305 (1970); *Hill v. U. S. Plywood-Champion Co.,* 12 Or.App. 1, 503 P.2d 728 (1972); 2 A. Larson, *supra,* at 10–136. It is much easier for the Fund to prove the employability of the appellant for a particular job than for

appellant to try to prove the universal negative of not being employable at any work.

 It is the opinion of this Court that the evidence as a matter of law places the appellant within the odd-lot category.[2] He is a 48-year-old male with a ninth-grade education. His vocational training and skills are confined solely to heavy manual labor, which he can no longer perform. As a result of his injuries, he experiences almost constant pain in both of his legs, his left arm, and the cervical, thoracic, and lumbar areas of his spine. He testified that the pain increases if he either sits in one place or walks around for any length of time. Appellant is also restricted in his ability to lift objects and to use his arms. He lives in a small mountain community where the opportunities for light work are limited. Therefore, the Fund must show that some kind of suitable work is regularly and continuously available to appellant.

In meeting its burden, it will not be sufficient for the Fund to merely show that appellant is able to perform some type of work. Idaho Code § 72–425 requires that the Commission consider the economic and social environment in which the claimant lives. To be consistent with this requirement it is necessary that the Fund introduce evidence that there is an actual job within a reasonable distance from appellant's home which he is able to perform or for which he can be trained.[3] In addition, the Fund must show that appellant has a reasonable opportunity to be employed at that job. It is of no significance that there is a job appellant is capable of performing if he would in fact not be considered for the job due to his injuries, lack of education, lack of training, or other reasons.

The order of the Industrial Commission is reversed and the case is remanded to the Commission for further proceedings consistent with this opinion.

Costs to appellant.

McFADDEN, C. J., and SHEPARD and BISTLINE, JJ., concur.

BAKES, Justice, dissenting:

As much as I agree with the factual conclusions which the Court arrives at concerning the extent of the claimant's injury, and his limited ability to obtain and perform employment, the Court is essentially performing a factfinding function which under the law is reserved to the commission. Art. 5, § 9, Idaho Constitution; I.C. § 72–724. While the line between what is a question of fact and what is a question of law is often obscure, cf. *Dean v. Dravo Corp.*, 97 Idaho 158, 540 P.2d 1337 (1975), and *Beslanwitch v. Valley Dodge Center, Inc.*, 93 Idaho 390, 565 P.2d 583 (1977), I think the Court has stepped over the line in this case.

---

2. Where the evidence is undisputed and is reasonably susceptible to only one interpretation, whether a claimant falls within the odd-lot category is a conclusion of law. *Spanbauer v. Peter Kiewit Sons' Co.*, 93 Idaho 509, 465 P.2d 633 (1970); *Wachtler v. Calnon*, 90 Idaho 468, 413 P.2d 449 (1966); *Colson v. Steele*, 73 Idaho 348, 252 P.2d 1049 (1953).

3. After his last injury, appellant moved from Orofino, Idaho, to New Meadows, Idaho. A claimant should not be permitted to achieve permanent disability by changing his place of residence. Therefore, in meeting its burden the Fund can introduce evidence of an actual job within either community.