795 P.2d 312

Barry E. DUMAW, Claimant–Appellant, Cross–Respondent,

v.

J.L. NORTON LOGGING, Employer, and Associated Loggers Exchange, Surety, Defendants–Respondents, Cross–Appellants.

No. 18129.

Supreme Court of Idaho.

July 18, 1990.

**152**

John T. Mitchell, Coeur d'Alene, for claimant-appellant, cross-respondent.

Glenna M. Christensen (argued), Moffatt, Thomas, Barrett, Rock & Fields, Boise, for defendants-respondents, cross-appellants.

JOHNSON, Justice.

This is a worker's compensation case. The issues presented and our resolution of them are:

1. Was there substantial competent evidence to support the Industrial Commission's determination that the employee was totally and permanently disabled under the odd-lot doctrine?

   We conclude that there was sufficient evidence.

2. Do the facts support the Commission's apportionment of fifty percent of the cause of the disability to a preexisting impairment?

   We vacate the Commission's order and remand to the Commission for reconsideration under *Archer v. Bonners Ferry Datsun*, 117 Idaho 166, 786 P.2d 557 (1990).

3. Was there substantial competent evidence to support the Commission's denial of attorney fees to the employee because of discontinuation of compensation for temporary disability?

   We conclude that there was sufficient evidence.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Barry E. Dumaw (the employee) injured his back three times during 1986 while working for J.L. Norton Logging (the employer). The employee worked until February 1987, when the employer interrupted its operations because of spring breakup. When the employer commenced operations again, the employee declined two requests by the employer to return to work. When the employee offered to return to work, he was told he had taken too much time off and had been replaced by another employee.

The employee then sought treatment by a chiropractor, who examined the employee, took x-rays, and referred the employee to an osteopath. The osteopath diagnosed the employee as having chronic lumbosacral sprain with degenerative arthritis of the spine and referred the employee to an orthopedic surgeon for a second opinion. The orthopedic surgeon confirmed the osteopath's diagnosis and noted that the employee had experienced intermittent symptoms for many years and chiropractic treatment in the past.

The employer and its surety had the employee examined by a panel of physicians. The panel reached the same diagnosis as the osteopath and the orthopedic surgeon, but concluded that the accidents only temporarily aggravated the underlying degenerative changes, that the employee had no permanent physical impairment from the accidents, and that the employee was capable of engaging in less vigorous employment. Based on the report of the panel, the employer's surety discontinued temporary disability benefits to the employee.

In January 1988, the employee filed an application for hearing before the Commission. The employee's attorney then had the employee examined by another orthopedic surgeon, who concluded that the employee's preexisting conditions had been aggravated and accelerated by the accidents.

The Industrial Special Indemnity Fund (ISIF) was then joined as an additional party defendant in the proceeding before the Commission. Subsequently, ISIF reached a settlement with the employee as to any liability it might have for the employee's disability and was dismissed from the proceeding.

Following a hearing, a referee who had been assigned by the Commission to hear the case issued findings of fact, conclusions of law, and an order. In the order the

referee (1) dismissed the employee's claims as to the first and third accidents, (2) awarded the employee total temporary disability benefits up to the time he was first seen by the second orthopedic physician, (3) determined that the employee suffered from a preexisting impairment in the form of a degenerative disease that was manifest prior to the second accident, (4) determined that the employee was totally and permanently disabled under the odd-lot doctrine, (5) apportioned the total permanent disability equally between the second accident and the preexisting impairment, (6) determined that the employer and its surety were responsible for fifty percent of the employee's disability, and (7) denied the employee attorney fees for the discontinuation of the compensation for temporary total disability. The Commission approved and confirmed the referee's findings, conclusions, and order and adopted them as the decision and order of the Commission.

The employee appealed the decisions concerning apportionment of his disability and the denial of attorney fees. The employer and its surety cross-appealed the determination of total permanent disability under the odd-lot doctrine.

## II.

### THERE WAS SUBSTANTIAL COMPETENT EVIDENCE TO SUPPORT THE ODD–LOT DETERMINATION.

The employer and its surety assert that there was not substantial competent evidence to support the Commission's determination that the employee was totally and permanently disabled under the odd lot doctrine. We disagree.

■ The Commission ruled that the employee had sustained his burden of proving that while he was physically able to perform some work, he was so handicapped that he would not be employed regularly in any well-known branch of the labor market absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on his part. This is the formulation of "odd-lot" worker in *Lyons v. Industrial Special In-*

*demnity Fund,* 98 Idaho 403, 406, 565 P.2d 1360, 1363 (1977). In *Lyons* this Court held that the evidence as a matter of law placed the employee within the odd-lot category. *Id.* at 407, 565 P.2d at 1364. We explained that "[w]here the evidence is undisputed and is reasonably susceptible to only one interpretation, whether a claimant falls within the odd-lot category is a conclusion of law." *Id.* at 407 n. 2, 565 P.2d at 1364 n. 2.

Here, there was conflicting evidence as to the employee's employability. The estimates of the portion of the jobs the employee could have performed before the accident that he was precluded from performing after the accident ranged from twenty percent to eighty percent. Therefore, we conclude that the employee was not an odd-lot worker as a matter of law.

■ Because he was not an odd-lot worker as a matter of law, the employee's burden of proof in attempting to establish a prima facie case of odd-lot status was to prove the unavailability of suitable work. *Huerta v. School Dist. No. 431,* 116 Idaho 43, 47, 773 P.2d 1130, 1134 (1989). There are three methods by which the employee may prove a prima facie case of odd-lot status: (1) by showing what other types of employment the employee has attempted, (2) by showing that the employee, or vocational counselors, employment agencies, or the Job Service on behalf of the employee, have searched for other work for the employee, and that other work was not available, or (3) any efforts of the employee to find suitable employment would have been futile. *Id.* at 48–49, 773 P.2d at 1135–36.

■ Here, the referee and the Commission did not favor us with a finding as to which of these three methods was used to prove a prima facie case of odd-lot status. However, by reviewing the record we are able to eliminate reliance on the first two methods. There was no evidence that the employee attempted other types of employment or that the employee, or any counselor or employment agency on his behalf, searched for other work for him. Therefore, if we are to sustain the conclusion that the employee established a prima facie

case as an odd-lot worker, it must be on the basis that any efforts of the employee to find suitable employment would have been futile.

The use of futility as a method of proving a prima facie case of odd-lot status was announced by this Court in *Carey v. Clearwater County Road Department*, 107 Idaho 109, 686 P.2d 54 (1984). In *Carey* we said:

> Although the commission did find that claimant has not sought employment, other findings of the commission, which are amply supported by the evidence, indicate that the claimant had inquired into work and that his further efforts would have been futile in view of the lack of sedentary work available, claimant's inability to travel, claimant's lack of qualifications for any sedentary work that was available, and claimant's inability to work regularly and steadily due to his unreliable physical condition. We hold that claimant satisfied his burden of showing a *prima facie* case of being an odd-lot worker.

*Id.* at 113, 686 P.2d at 58.

As in this case, in *Carey* the Commission did not make a specific finding that it would have been futile for the employee to have sought other employment.

Here, as in *Carey*, the findings of the Commission, which are supported by the evidence, indicate that it would have been futile for the employee to have sought other employment, in view of the lack of availability of work the employee could have performed based on his limitations. The Commission's findings of fact included the following:

1. The employee was forty-six years old. He was a lifetime resident of Newport, Washington. He had approximately a ninth grade education and one year of machinist vocational-technical schooling. He had been employed in the woods from the age of fourteen or fifteen, as a heavy equipment operator, as a logging truck operator, and as a logging truck driver and mechanic. He began working for the employer in the fall of 1985 as a logging truck driver and was also responsible for mechanical repairs on the truck.

2. The employee has degenerative disc disease of the dorsal, lumbar, and sacrum, transitional lumbosacral segment and degenerative changes in both hips. These conditions preexisted the accidents that are the subject of this proceeding.

3. All the physicians who examined the employee agreed that he should not return to work doing the same job he had before the accidents and injury.

4. The employee was permanently physically impaired equal to twenty-eight percent of a whole person.

5. A private vocational consultant testified that the employee was precluded from eighty percent of the jobs he could have performed before the accident. The private consultant and a consultant with the rehabilitation division of the Commission both testified that jobs that are not classed from medium to very heavy are extremely limited in the Newport area.

6. The employee is an odd-lot worker and is totally and permanently disabled when permanent physical impairment and nonmedical factors of age, education, experience, and geographic locale are considered.

The private vocational consultant also testified that the employee was precluded from performing the full scope of light-duty work, because of the restrictions that had been placed on the employee as to standing, walking, bending, and squatting. The consultant said that the employee could probably perform some light-duty jobs, if they were modified or in an unusual setting. He said that these jobs would not exist in substantial numbers and that it was difficult to find jobs of this nature in the geographical region where the employee lived. He concluded that sedentary jobs had been somewhat eliminated for the employee also.

Based on these findings and testimony, we hold, as we did in *Carey*, that the employee satisfied his burden of showing a prima facie case of being an odd-lot worker. The burden then shifted to the employer and its surety to demonstrate the avail-

ability of regular employment within the employee's capabilities. *Carey*, 107 Idaho at 113, 686 P.2d at 58. The Commission found that the employment suggested by the employer and its surety was not employment in which the employee would be regularly employed. There was substantial competent evidence to support this finding.

### III.

IN LIGHT OF *ARCHER V. BONNERS FERRY DATSUN*, THE COMMISSION SHOULD RECONSIDER WHETHER THE EMPLOYEE'S PREEXISTING CONDITION WAS A PERMANENT PHYSICAL IMPAIRMENT UNDER I.C. § 72–332.

The employee asserts that there was no substantial competent evidence to support the Commission's apportioning to the employer and its surety only fifty percent of the liability for the employee's total permanent disability. Specifically, the employee argues that there was no evidence to support a finding that his preexisting condition was manifest or that it was a permanent physical impairment under I.C. § 72–332. We hold that there was substantial competent evidence to support the finding that the preexisting condition was manifest. However, we vacate the order apportioning the liability for the disability and remand for reconsideration by the Commission of its finding that the preexisting condition was a permanent physical impairment in light of our decision in *Archer v. Bonners Ferry Datsun*, 117 Idaho 166, 786 P.2d 557 (1990).

There are four elements of a prima facie case for apportioning liability for a total permanent disability under I.C. § 72–332:

1. Whether there was a preexisting impairment.
2. Whether the impairment was manifest.
3. Whether the impairment was a subjective hindrance.
4. Whether the impairment in any way combines in causing total permanent disability.

*Garcia v. J.R. Simplot Co.*, 115 Idaho 966, 968, 772 P.2d 173, 175 (1989). Here, only the second and third of these elements are at issue.

■ The Commission found that the employee's preexisting degenerative disc disease was manifest prior to the accident and injury for which the Commission awarded compensation. In *Royce v. Southwest Pipe of Idaho*, 103 Idaho 290, 294, 647 P.2d 746, 750 (1982), we said: " 'Manifest' means that either the employer or employee is aware of the condition so that the condition can be established as existing prior to the injury." The employee's own testimony indicated that he had experienced prior problems with his back.

While the evidence is subject to differing interpretations as to cause of these prior back problems, it is the function of the Commission, not of this Court, to weigh the evidence. In reviewing the Commission's decision, we must view the facts and all inferences from them most favorably to the party who prevailed before the Commission. *Garcia*, 115 Idaho at 968–69, 772 P.2d at 175–76. We conclude that there was substantial competent evidence to support the finding of the Commission that the employee's preexisting condition was manifest.

■ As to the Commission's finding that the preexisting condition was a subjective hindrance, we conclude that our recent decision in *Archer v. Bonners Ferry Datsun*, 117 Idaho 166, 786 P.2d 557 (1990), undermines the rationale used by the Commission to apportion the liability for the employee's total permanent disability under I.C. § 72–332. The Commission relied on our decision in *Mapusaga v. Red Lion Riverside Inn*, 113 Idaho 842, 748 P.2d 1372 (1987), in concluding that the employee's preexisting condition was a permanent physical impairment requiring apportionment under I.C. § 72–332.

In *Archer* we reformulated the *Mapusaga* test "to conform it to the intent of the legislature in enacting I.C. § 72–332(2) in 1981." 117 Idaho at 170, 786 P.2d at 561. We abandoned the two-step process of *Mapusaga* and adopted a test that focuses on

whether or not the preexisting condition constituted a hindrance or obstacle to employment for the particular claimant.

Here, the findings of the Commission on the issue of subjective hindrance indicate to us that the Commission applied the *Mapusaga* test. Because *Archer* was not issued until several months after the Commission's decision, the Commission could not have contemplated the new test we have adopted. Therefore, it is necessary for us to vacate the order apportioning liability under I.C. § 72–332 and remand the case to the Commission for a determination under *Archer*.

IV.

THERE WAS SUBSTANTIAL COMPE-
TENT EVIDENCE TO SUPPORT
THE COMMISSION'S DENIAL OF
ATTORNEY FEES FOR THE DIS-
CONTINUATION OF COMPENSA-
TION FOR TOTAL TEMPORARY
DISABILITY.

The employee asserts that there was not substantial competent evidence to support the Commission's denial of attorney fees under I.C. § 72–804, because the employer's surety discontinued his total temporary disability benefits. We disagree.

Although the Commission found that the employee was entitled to compensation for total temporary disability after the employer's surety discontinued it payments, the Commission denied the employee attorney fees under I.C. § 72–804. This decision was based on two grounds. The first ground was that the employee's request for attorney fees was not timely because it was not reported as an issue in his request for calendaring, at the prehearing conference, by amendment to the prehearing order, or at the hearing. However, the Commission considered the request and found that the employer and its surety did not act unreasonably when they relied upon the panel report that there was no permanent physical impairment due to the accident and that the restrictions on the employee were caused by the degenerative disease,

not the lumbosacral strain caused by the accident.

I.C. § 72–804 provides:

**72–804. Attorney's fees—Punitive costs in certain cases.**—If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable ground, or that an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the injured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation as provided by law justly due and owing to the employee or his dependents, the employer shall pay reasonable attorney fees in addition to the compensation provided by this law. In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission.

■ This statute does not make the award of attorney fees contingent on fulfillment of some procedures of the Commission. The Commission has authority pursuant to I.C. § 72–508 "to promulgate and adopt reasonable rules and regulations for effecting the purposes of [the worker's compensation act]." We have upheld the application of the Commission's rules allowing a default against a party who did not file a pleading in a timely manner. *Fisher v. Bunker Hill Co.*, 96 Idaho 341, 528 P.2d 903 (1974). However, here, the issue is not whether the employee requested attorney fees, but whether he continued to request attorney fees expressly throughout the proceedings.

In his application for a hearing, the employee listed as one of the issues the period of temporary disability and benefits due and requested attorney fees. In his request for calendaring, the employee listed as one of the issues the period of disability and benefits due. He did not reiterate a request for attorney fees. In the referee's

prehearing order, under the title "SIMPLIFICATION OF ISSUES," the referee listed dates of total temporary disability. In his closing brief, after the hearing, the employee argued that he was entitled to attorney fees under I.C. § 72–804.

We are not prepared to allow an employee's right to attorney fees pursuant to a specific statutory provision to be controlled by a technical interpretation of the rules of the Commission. The employee claimed attorney fees in his first pleading. His right to attorney fees was dependent on the Commission's determination whether the employer's surety had discontinued the employee's compensation for total temporary disability without reasonable grounds. The issue of the employee's entitlement to more compensation for total temporary disability remained in the statement of issues throughout the proceedings. This was sufficient to entitle the employee to have his claim for attorney fees considered when he was awarded further compensation for his temporary disability.

We also conclude that there was substantial competent evidence to support the Commission's finding that the employer and its surety did not act unreasonably when they relied upon the panel report in denying further compensation for temporary disability. The panel report contained this assessment:

> This man does have degenerative disk disease of the lower dorsal as well as the lumbosacral region with a transitional lumbosacral segment; these have been aggravated by his injury of November 10, 1986. The effects of this injury, however, have now subsided and have reached a fixed and stationary state, and further treatment is not indicated.
>
> He is able to return to gainful employment; however, he should avoid lifting over 50 pounds at any one time. He should avoid repetitive bending, stooping and twisting motions. This is because of the preexisting degenerative changes and not because of this particular injury. With the preexisting disease there is the probability that his back pain will increase with time, due to the natural pro-

gression of that disease; however, there is no reason to believe that the degenerative disease is accelerated or permanently aggravated by the preexisting disease. He is in Category II of dorsolumbar function. This is due to his preexisting disease and not due to this injury.

We defer to the Commission's determination that this assessment established a reasonable ground for the discontinuation of the temporary disability benefits. This is a factual determination and not one in which we should reweigh the evidence before the Commission.

## V.

### CONCLUSION.

We affirm the Commission's determination that the employee was totally and permanently disabled under the odd-lot doctrine and the Commission's denial of attorney fees to the employee. We vacate the Commission's order apportioning fifty percent of the cause of the disability to a preexisting impairment and remand to the Commission for reconsideration under *Archer v. Bonners Ferry Datsun*, 117 Idaho 166, 786 P.2d 557 (1990).

We award costs on appeal, but no attorney fees to the employee, Dumaw.

BAKES, C.J., and BISTLINE, BOYLE and McDEVITT, JJ., concur.