# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 43708

| | | |
|---|---|---|
| RODRIGO RODRIGUEZ, | ) | |
| | ) | |
| Claimant-Respondent, | ) | Boise, December 2016 Term |
| | ) | |
| v. | ) | 2017 Opinion No.12 |
| | ) | |
| CONSOLIDATED FARMS, LLC, dba | ) | Filed: February 23, 2017 |
| ELK MOUNTAIN FARMS, Employer; and | ) | |
| INDEMNITY INSURANCE COMPANY | ) | Stephen w. Kenyon, Clerk |
| OF NORTH AMERICA, Surety, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| _____ | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Commission is <u>affirmed</u>. Costs on appeal are <u>awarded</u> to respondent.

Bowen & Bailey, LLP, Boise, attorneys for appellant. W. Scott Wigle argued.

Johnson & Monteleone, LLP, Boise, attorneys for respondent. Bruce S. Bistline argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

Appellants, Consolidated Farms LLC, dba Elk Mountain Farms ("Employer"), and Indemnity Insurance Company of North America, appeal from the Idaho Industrial Commission's finding that Respondent, Rodrigo Rodriguez ("Rodriguez"), was totally and permanently disabled under the odd-lot doctrine.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Rodriguez was born in Mexico. He attended school through the fifth grade, when the death of his father required him to enter the labor force. He performed field work until 1979, when, at age 21, he legally immigrated to California. In California, Rodriguez found work harvesting fruit. Ten years later, Rodriguez moved to Bonners Ferry, Idaho, where he began working as a laborer on Employer's 2000 acre hop farm (the "Farm"). Rodriguez's employment

1

was seasonal. Each year he was required to sign a waiver acknowledging that his employment was "Temporary" rather than "Permanent" and that his employment would end at the conclusion of the growing season. For 21 years Rodriguez was rehired by Employer at the beginning of each season. For many of these seasons he was part of the "Core Group" of employees. The Core Group would arrive at the farm early in the spring and stay until the winter, performing trellis work, tractor work, and maintenance.

During the 2010 season, Rodriguez was placed in charge of irrigation for the Farm. This position required him to drive a four-wheeler from field to field in order to locate and manually repair any problems with the drip system. In addition to his work on irrigation, Rodriguez also helped operate and maintain the machinery used in the harvesting process. On September 8, 2010, Rodriguez, who is right handed, was attempting to clear dirt and other debris from a conveyor belt using a cutting hook. As Rodriguez reached into the machine, the conveyor belt sped up, catching his arm. The machine crushed Rodriguez's right hand and forearm, breaking numerous bones and causing extensive damage to his nerves and tendons. Following his injury, Rodriguez underwent six surgeries and extensive physical therapy in order to regain limited use of his arm.

On May 10, 2011, Rodriguez's case was assigned to Richard Hunter ("Hunter"), a field consultant with the Industrial Commission Rehabilitation Division in Sandpoint, Idaho.

On June 8, 2011, Hunter met with Ed Atkins ("Atkins"), a representative of Employer, to conduct a job site evaluation ("JSE"). The purpose of a JSE is to determine the physical demands of a time-of-injury job in order to aid medical examiners in determining whether an injured party is capable of returning to work. Hunter determined, in conducting the JSE, that "[employer was] interested in helping [Rodriguez] return to work, whether it be modified or alternative . . . his knowledge of the drip irrigation system is invaluable to the employer." Hunter later testified that Employer explained to him that should Rodriguez accept a position they would provide Rodriguez with a co-worker to help with any tasks that Rodriguez was unable to perform.

While Hunter was optimistic, Rodriguez, according to Hunter's testimony, was not. Hunter testified that "[Rodriguez] felt that . . . his employer would not want to bring him back, he didn't understand why he would modify or provide alternate duties. He felt that once he returned to work and . . . the work comp claim was over, that he would be dismissed."

In September of 2011, having undergone five surgeries, Rodriguez attempted to return to work. He found that he was unable to perform his previous duties adequately. This led him to undergo his sixth surgery.

On April 11, 2012, Employer provided Rodriguez with a written job offer. The job offer makes no mention of any modifications to account for Rodriguez's injuries. It states as follows:

The following work is available:

- Drip Operator
- Miscellaneous Labor-Greenhouse
- Compost Operator
- Grounds Maintenance
- Contract Support
- Dreyer Operator
- Field Mower
- Cultivator
- Field Prep

On May 17, 2012, Royce Van Gerpen, an occupational medicine practitioner, performed an independent medical exam ("IME") on Rodriguez. Van Gerpen concluded that "Job analyses for Seasonal Laborer, Tractor-Trailer Truck Driver, and Tractor Operator are reviewed and disapproved. . . . [however] I presently do not believe he is permanently unable to return to work."

On June 21, 2012, Rodriguez filed a disability/medical benefits workers compensation complaint with the Idaho Industrial Commission (the "Commission"). In July of 2012, Rodriguez moved to Boise to be closer to his daughter who was attending BSU.

In the fall of 2012, Rodriguez's Industrial Commission Rehabilitation Division case was transferred to Teresa Ballard ("Ballard") in the Nampa office. She referred Rodriguez to Dr. Kevin R. Kraft ("Kraft"). On examination, Kraft determined that Rodriguez was at maximum medical improvement. He indicated that Rodriguez could return to work for eight hours a day effective February 7, 2013, with the following restrictions: "No lifting in excess of fifty pounds occasionally and 35 pounds overhead occasionally with both hands; and 15 pounds occasionally with the right hand overhead. No pushing or pulling greater than seventy-five pounds, limit

3

simple grasping with the right hand frequently." Kraft assigned a 62% upper body and 37% whole person disability rating to Rodriguez.

Over a year later, on April 23, 2014, Bret Adams, a physical therapist located in Boise, conducted a functional capacity evaluation (an "FCE") on Rodriguez. Adams' report concluded that:

> based on [Rodriguez's] low function in his right upper extremity with simple reaching and grasping, I would not recommend that he operate any equipment requiring the use of his right arm. In addition, he demonstrated some left scapular dysfunction during testing which would likely limit his ability to safely drive for extended periods using only his left arm. Based on this, I would recommend that he only be allowed to drive 4 hours a day.

In preparation for his case before the Commission, Rodriguez retained Terry L. Montague, M.A. ("Montague"), to provide expert testimony as to Rodriguez's employability. Montague testified that Rodriguez has no transferable skills and could only be considered for manual labor. Montague concluded that Rodriguez had lost 100% of his access to the labor market and 100% of his wage earning capacity. He testified that:

> [Rodriguez] has had significant and by some physicians' description a severe crush injury to his right dominant hand and arm. He can't do simple grasping motions. He has extremely limited use of his right arm. When you look at that fact alone and then couple it with the fact that he has a fifth-grade education from Mexico, he doesn't speak fluent English, he does not perform any skilled or semiskilled work, he's in his late 50s now, his chances of being offered work is nil.

Appellants retained Mary Barros-Bailey, Ph.D. ("Barros-Bailey") to provide expert testimony as to Rodriguez's employability. Barros-Bailey testified that Rodriguez was either 34% or 57% whole person disabled. She calculated that he had lost access to 83% of the job market. Barros-Bailey testified that she did not think it would be futile for Rodriguez to look for work. "I think there would be a small pool of jobs, but I think he would be able to find something."

Rodriguez's case was assigned to Referee Michael E. Powers ("Referee Powers"). Referee Powers conducted two hearings on the case. At those hearings, Rodriguez testified that he did not think he could work for Employer without the use of his right hand.

> To go back to work, to work well, I would have done it, but the ranch, I know them [sic] very well and there is no job that I can do in the condition that I am, because physically, emotionally, mentally I have been damaged. . . . [F]or example, take a tractor. . . . the levers in the tractor, you drive with your left hand

4

and the right hand is busy operating. That's in the tractors. If I take the water truck, it has a hose that I think is six inches. You have to connect the hose and turn on the lever . . . in order to irrigate ahead of you or to the left or to the right, they are in our right hand. I can't do that. For the loader, it has a knob . . . in the steering wheel, but the lever is to grab, to lift, to release, it's on the right hand. To drive the four wheeler . . . you're in the field with . . . holes, with grooves, with pits. My hand doesn't have the strength to be . . . controlling the vehicle.

Atkins also testified at a hearing before Referee Powers. Atkins testified that:

[W]e assumed that . . . after the surgeries were complete that [Rodriguez] would be able to come back and work for us in some capacity, so we did look at all of the various tasks that we perform at the farm and make some type of assessment as to what he would be capable of doing, and the drip operator position, as I mentioned earlier we were scaling up, getting ready to scale up, which we did in 2012 and we have since. It was a very viable position for him, again, especially as we increased hop production he would transition back to primarily a supervisory role. . . . [P]rior to downsizing we had other folks familiar with the system but we had lost all of those folks. . . It would just be a matter of reassigning – as I said, basically his staff, his crew would have to assist him in whatever – with whatever limitation he had. . . . [A]s time progressed he would have had a diminishing role in the actual physical requirements of operating the system, because you assume more of a supervisory role.

Atkins references to "scaling up" and "downsizing" are in relation to variance in hop production from year to year. He explained that:

[W]e were in full production in hops in 2009 with approximately 1,700 acres in hops, and the spring of 2010, due to inventory levels, we reduced that acreage down to approximately 300. We maintained that acreage until the spring of 2012 and we have been planting hops since.

After considering the evidence, Referee Powers drafted proposed findings of fact, conclusions of law and recommendation. Therein, Referee Powers concluded that Rodriguez had shown his entitlement to permanent partial disability benefits pursuant to the odd-lot doctrine. Referee Powers reasoned that:

[Rodriguez's] experience and whatever transferrable skills he may possess are related solely to a specific and unique farming operation. There is no evidence that [Rodriguez] could apply those skills to other occupations where he would be competing with younger folks with a different set of transferrable skills. No jobs have been identified that [Rodriguez] may have a reasonable opportunity of securing. . . . [I]t would be futile for [Rodriguez] to look for suitable work.

On September 24, 2015, the Commission issued its findings of fact, conclusions of law, and order. It concluded that Rodriguez had suffered a disability of 57% whole person and was permanently disabled under the futility prong of the odd-lot doctrine. It reasoned that:

5

At the end of the day, it is impossible to ignore the fact that [Rodriguez] is essentially an older, uneducated field worker, with severe impairment of dominant upper extremity function, who will find it extremely difficult to compete for any of his past relevant employments, or other work for which he is suited from a physical standpoint.

With respect to the offer of employment made by Employer, the Commission found that:

[I]t is impossible to know whether the modified job, as described by Mr. Atkins, is one that [Rodriguez] has retained the physical capacity to perform. Therefore, it is unclear whether the actual job is 'suitable.' As problematic, is the requirement that the suitable work be 'regularly and continuously available'. . . Currently, Employer is enjoying high demand, which has allowed it to significantly expand acres in production with a commensurate increase in its workforce. Mr. Atkins testified that it is the current expansion which supports Employer's ability to treat the job to which they propose to return [Rodriguez] as mainly a supervisory job, a job in which the physical components of the work which [Rodriguez] once performed can be performed by his subordinates. . . . However, it does not seem unreasonable to suppose that the same factors which drove the decrease in production in 2010 might arise again in the future, leaving Employer without the luxury of treating [Rodriguez's] position as largely supervisory in nature. On this evidence we cannot conclude that Defendants have met their burden of proving that suitable work is 'regularly and continuously available' to [Rodriguez], notwithstanding that Employer's current offer of employment is legitimate and sincere.

Employer appeals.

### III. ISSUE ON APPEAL

1.      Did the Commission err in determining that Rodriguez is totally and permanently disabled under the odd-lot doctrine?

### IV. STANDARD OF REVIEW

When this Court reviews a decision from the Industrial Commission, it exercises free review over questions of law but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Boise Orthopedic Clinic v. Idaho State Ins. Fund (In re Wilson)*, 128 Idaho 161, 164, 911 P.2d 754, 757 (1996).

. . .

The Commission's conclusions on the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous. *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). On appeal, this Court is not to re-weigh the evidence or consider whether it would have reached a

different conclusion from the evidence presented. *See Warden v. Idaho Timber Corp.*, 132 Idaho 454, 457, 974 P.2d 506, 509 (1999).

*Jensen v. City of Pocatello*, 135 Idaho 406, 409, 18 P.3d 211, 214 (2000).

## V. ANALYSIS

**A.    The Commission did not err in determining that Rodriguez is totally and permanently disabled under the odd-lot doctrine.**

> Claimants may prove that they are totally and permanently disabled by demonstrating that they fit within the definition of an odd-lot worker. *Lyons v. Industrial Special Indem. Fund*, 98 Idaho 403, 565 P.2d 1360 (1977). The odd-lot category is for those workers who are so injured that they can perform no services other than those that are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist. *Id.* Such workers need not be physically unable to perform any work at all. *Id.* They are simply not regularly employable in any well-known branch of the labor market absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on their part. *Id*

*Gooby v. Lake Shore Management Co.*, 136 Idaho 79, 83, 136 P.3d 390, 394 (2001).

In determining odd-lot status, this Court established a burden shifting framework as follows: "if the evidence of the medical and nonmedical factors places a claimant *prima facie* in the odd-lot category the burden is then on the employer . . . to show that some kind of suitable work is regularly and continuously available to the claimant." *Lyons,* 98 Idaho at 406, 565 P.2d at 1363. Further, "it will not be sufficient for [an employer] to merely show that [claimant] is able to perform some type of work. . . . The employer must introduce evidence that there is an actual job within a reasonable distance from [claimant]'s home which he is able to perform or for which he can be trained." *Id.* at 407, 565 P.2d at 1364.[1]

This Court proceeded to hold that the following evidence was sufficient to demonstrate a *prima facie* showing of odd-lot status:

> [Claimant] is a 48-year-old male with a ninth-grade education. His vocational training and skills are confined solely to heavy manual labor, which he can no longer perform. As a result of his injuries, he experiences almost constant pain in both of his legs, his left arm, and the cervical, thoracic, and lumbar areas of his spine. He testified that the pain increases if he either sits in one place or walks around for any length of time. Appellant is also restricted in his ability to lift objects and to use his arms. He lives in a small mountain community where the opportunities for light work are limited.

---

[1] Although there does not appear to be any disagreement between the parties on the issue, it is worth noting that this Court has determined the phrase "reasonable distance from [claimant]'s home" to refer to both the claimant's home at the time of the injury and the claimant's home at the time of the hearing. *See Davaz v. Priest River Glass Co., Inc.*, 125 Idaho 333, 337, 870 P.2d 1292, 1296 (1993).

*Id.*

Seventeen years later, in *Carey v. Clearwater County Road Department*, this Court clarified how a *prima facie* showing of odd-lot status may be made:

> Although the commission did find that claimant has not sought employment, other findings of the commission, which are amply supported by the evidence, indicate that the claimant had inquired into work and that his further efforts would have been futile in view of the lack of sedentary work available, claimant's inability to travel, claimant's lack of qualifications for any sedentary work that was available, and claimant's inability to work regularly and steadily due to his unreliable physical condition. We hold that claimant satisfied his burden of showing a *prima facie* case of being an odd-lot worker.

107 Idaho 109, 113, 686 P.2d 54, 58 (1984).

Since *Lyons* and *Carey*, this Court has explicitly delineated three methods of proving odd-lot status:

> There are three methods by which the employee may prove a prima facie case of odd-lot status: (1) by showing what other types of employment the employee has attempted, (2) by showing that the employee, or vocational counselors, employment agencies, or the Job Service on behalf of the employee, have searched for other work for the employee, and that other work was not available, or (3) any efforts of the employee to find suitable employment would have been futile.

*Dumaw v. J.L. Norton Logging*, 118 Idaho 150, 153, 795 P.2d 312, 315 (1990).

In *Dumaw*, this Court upheld a Commission determination that an employee with a degenerative disc disease had made a *prima facie* showing that he qualified for odd-lot status under the futility prong. *Id.* at 154, 795 P.2d at 316. The Commission considered evidence of the claimant's "permanent physical impairment and nonmedical factors of age [46], education [ninth grade education and one year of machinist vocational-technical schooling], experience [significant time spent as a heavy equipment operator, as a logging truck operator, and as a logging truck driver and mechanic], and geographic locale [Newport, Washington]." *Id.* The Commission also considered that the claimant was "physically impaired equal to twenty-eight percent of a whole person," that "[a] private vocational consultant testified that the employee was precluded from eighty percent of the jobs he could have performed before the accident," and that "[a]ll the physicians who examined the employee agreed that he should not return to work doing the same job he had before the accidents and injury." *Id.*

More recently, in *Tarbet v. J.R. Simplot Co.*, this Court upheld a Commission determination of *prima facie* odd-lot status where:

Claimant was sixty-two years of age and had a tenth grade education. As a result of his last industrial accident, he is restricted from lifting more than five pounds above waist level on a continuous basis, or ten pounds occasionally; from repetitive squatting, crawling, kneeling, or walking up or down stairs; from climbing a ladder or step ladder; and from more than occasional rotational positions with sitting, rotational standing, or bending forward. During his thirty-six years of work for Employer, Claimant performed heavy physical labor. Employer has not pointed to any skills Claimant acquired during that time that are transferable to a job he could perform with the physical restrictions resulting from his last accident.

151 Idaho 755, 759, 264 P.3d 394, 398 (2011).

       1.        *Rodriguez made a prima facie showing of futility.*

In order to prove odd-lot status under the futility prong, a claimant must make a *prima facie* showing that he or she is "not regularly employable in any well-known branch of the labor market absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on their part." *Id.* at 760, 264 P.3d at 399. In this case, the Commission concluded that Rodriguez had made a *prima facie* showing that he was not regularly employable. In coming to this conclusion it considered the facts that Rodriguez is 57 years old, has a fifth grade education, has suffered a severe injury to his dominant hand, has spent his entire life performing manual labor, has job skills and knowledge that are specific to the Farm, and has a level of total disability of 57% (which, notably, was higher than the level of total disability in *Dumaw*). The Commission considered expert testimony from Montague that no regular employment position existed that Rodriguez could perform; presumably, the Commission considered Montague's testimony with a grain of salt given the concerns expressed by the Commission regarding Montague's testimony. The Commission also considered testimony from Barros-Bailey that Rodriguez had lost access to 83% of the labor market (a higher level of loss of access than in *Dumaw*). No party testified that Rodriguez could perform all of the tasks his job had required at the time of injury. These facts, considered together, constitute substantial and competent evidence supporting the Commission's finding that Rodriguez was not regularly employable.

Appellants argue on appeal that the Commission erred in determining that Rodriguez had made an adequate *prima facie* showing of futility because "[Rodriguez] actually turned down a viable return-to-work offer from his long term employer." We find this argument unavailing. The first step of the odd-lot doctrine consists of a *prima facie* showing by the claimant that he or she

will not be "employed regularly in any well-known branch of the labor market absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on [claimant's] part." *Lyons*, 98 Idaho at 406, 565 P.2d at 1363. This *prima facie* showing concerns positions that regularly occur in the labor market. A single job, offered by an employer who has a previous relationship with a claimant, is of limited relevance in this context because it is unlikely to be representative of a "branch of the labor market."

Appellants' remaining arguments all consist of pointing to evidence weighing against the Commission's finding of futility. Specifically, Appellants argue that: (1) "Dr. Kraft authorized [Rodriguez] to return to work full eight hour days"; (2) "Mary Barros-Bailey opined that there were return to work opportunities for [Rodriguez] in the Boise area"; and (3) "the only vocational consultant who concluded that a work search would be futile was [Rodriguez's] retained expert, Montague. Montague's work in this case was roundly criticized in the Commission's opinion, which found that his approach and conclusions were not entirely objective. We agree with Appellants that this evidence weighs against the Commission's finding of futility. The Commission recognized as much. However, having considered the totality of the evidence, the Commission still concluded that efforts to find a suitable job would have been futile. On appellate review this Court limits its consideration to whether or not substantial and competent evidence supports the Commission's findings. This Court will not disturb the Commission's determinations on the credibility and weight of evidence unless they are clearly erroneous. *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). The evidence cited by Appellants does not show that the Commission's finding was clear error. It does not constitute sufficient reason for this Court to second guess the Commission's conclusion. We will not reweigh the evidence in this case.

> 2. *Appellants demonstrated neither (1) that a kind of suitable work is regularly and continuously available in a well-known branch of the labor market, nor (2) that there is an actual job of that type within a reasonable distance from Rodriguez's home, which he is able to perform or for which he can be trained.*

On appeal, Appellants argue that the Commission erred when it concluded that Appellants had failed to prove that the job offered to Rodriguez was both suitable and continuously available. As an initial matter, Appellants appear to have misunderstood their burden. In *Lyons*, this Court established that "if the evidence of the medical and nonmedical factors places a claimant *prima facie* in the odd-lot category the burden is then on the employer .

. . to show that some kind of suitable work is regularly and continuously available to the claimant." 98 Idaho at 406, 565 P.2d at 1363. This language relates back to our earlier statement in the same case that an odd-lot claimant is one who is not regularly employable "in [a] well-known branch of the labor market absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on [his or her] part." *Id.* It follows that in order to carry its burden, an employer must provide evidence showing that a "kind of suitable work" in a "well-known branch of the labor market" exists and is "regularly and continuously available" in that market.

Once an employer has shown that a kind of suitable work exists, then the employer "must introduce evidence that there is an actual job within a reasonable distance from [claimant's] home which he is able to perform or for which he can be trained." *Id.* at 407, 565 P.2d at 1364. While clearly interrelated, providing evidence of an actual job opportunity is a separate evidentiary showing from providing evidence that a kind of suitable work exists that is regularly and continuously available in a well-known branch of the job market. In other words, an employer has a dual evidentiary burden once a claimant has made a *prima facie* showing of odd-lot status. First, an employer must show that there is a type of job that is both suitable for a claimant and that occurs regularly and continuously in a well-known branch of the job market. Second, an employer must show that an actual job of that type exists within a reasonable distance from a claimant's home as of either the time of injury or the time of the hearing.

Appellants have confused these burdens. They focus their argument on the proposition that an actual job existed that was offered to Rodriguez. They claim that the single job offered was itself both suitable and regularly and continuously available. Even if they had proven such a job offer, which they clearly failed to do, Appellants needed to show that a kind of job, not merely a single, unique, job tailored to Rodriguez' impairments, existed in the labor market. The reason for this rule is to protect disabled claimants. To allow an employer's burden to be satisfied by showing the existence of a single job tailored to a claimant would burden a claimant with significant risk. Companies' needs change. Companies go out of business. This is why the law requires not only a showing that a single job exists, but also a showing that it is a kind of job that exists regularly and continuously in a well-known branch of the labor market. Accordingly, if the single job opportunity offered by the employer ceases to exist, the claimant will have a legitimate chance to find another job of the same type.

11

In this case, Appellants have shown neither that a type of suitable job exists regularly and continuously in the labor market, nor that an actual job exists within a reasonable distance from Rodriguez's home, which he is able to perform or for which he can be trained. After reviewing the evidence, the Commission court concluded that "it is impossible to know whether the modified job, as described by Mr. Atkins, is one that Claimant has retained the physical capacity to perform. Therefore, it is unclear whether the actual job is 'suitable.'" We agree. The only evidence presented to the Commission by Appellants that a suitable job existed and had been offered was (1) conclusory testimony that a job had been offered that was suitable, and (2) a written job offer that provided no indication of suitability. Specifically, Appellants presented testimony to the Commission that "the job being offered to [Rodriguez] was essentially his time-of-injury job with any necessary modifications to account for his post-injury physical limitations." While such a job could hypothetically be adequate, a finding of suitability requires more evidence than this nebulous statement. It is concerning, to say the least, that Employer never provided the Commission with any kind of detailed breakdown of what tasks the alleged modified job would entail. Further, having failed to define the tasks Rodriguez would have to perform in his newly modified job, Appellants could not and did not thereafter provide proof that Rodriguez could perform said tasks.

The written job offer submitted into evidence was likewise insufficient to prove suitability. In reality, it is nothing more than a form document. It lists the following "work" as "available" to Rodriguez: Drip Operator; Miscellaneous Labor-Greenhouse; Compost Operator; Grounds Maintenance; Contract Support; Dreyer Operator; Field Mower; Cultivator; and Field Prep. The written offer contains no breakdown of what specific tasks are involved in these positions. It makes no assurance that Rodriguez will not be required to do any or all of them. It does not mention Rodriguez's injury or any accommodations that will be made for him. Appellants' suggestion that Rodriguez should have accepted the written job offer is unreasonable. There is nothing in the written job offer that would indicate that Rodriguez could perform any of the positions identified therein and no evidence was provided to the Commission that would suggest otherwise.

The Commission was right to be troubled by the complete absence of job specifics in evidence. A significant portion of Rodriguez's duties as part of the Core Group of employees was manual labor, which he can no longer perform. It was Appellants' burden to show that when

12

manual labor was removed from Rodriguez's job description, a viable and suitable job remained. Appellants failed on this account. They provided evidence of a job offer, but did not provide the necessary details for the Commission to be sure the job was suitable. We cannot expect the Commission to simply take an employer's word that a job will be suitable. There must be evidence presented of suitability.

Having correctly concluded that Appellants failed to provide sufficient evidence of a single suitable job, much less a type of suitable job, the Commission then correctly noted that no evidence had been provided that such work would be regularly and continuously available. Appellants argue that the best evidence that a position will be regularly and continuously available for Rodriguez is that a position has been available for Rodriguez for the last 20 years. This evidence is not especially helpful. Not only does this evidence do nothing to prove that a kind of suitable job is regularly and continuously available in the hops industry, it fails to even show that the specific job will be continuously available  The problem is that during the 20 years cited by Appellants, Rodriguez was able-bodied. His position at the Farm always involved a significant amount of physical labor. Given that he is now unable to perform a great deal of the tasks he had previously performed, the fact that Rodriguez's old position was regularly and continuously available does little to show that an exclusively supervisory position would also be regularly and continuously available.

Furthermore, Atkins' testimony did little to assuage the Commission's concerns. Atkins testified that Rodriguez's position was viable "especially as we increased hop production." However, no evidence was produced that hop production would remain elevated or continue to increase. As the Commission noted:

> When inventory levels were high, as they were in 2010, acres in production dwindled from 1700 acres to 300 acres. Currently, Employer is enjoying high demand, which has allowed it to significantly expand production with a commensurate increase in its workforce. Mr. Atkins testified that it is the current expansion which supports Employer's ability to treat the job to which they propose to return Claimant as mainly a supervisory job, a job in which the physical components of the work which Claimant once performed can be performed by his subordinates.

Appellants accuse the Commission of speculating that production will decrease in the future. However, Appellants' accusations of speculation are more applicable to themselves. Appellants, not the Commission, had the burden of showing employment that was regularly and continuously available. Appellants appear to assume that demand will remain steady across the

13

industry, and thus that their ability to provide Rodriguez with a job will not change. No evidence has been provided that this will be the case. The Commission was right to be concerned, especially given historical fluctuations in production.

In sum, the Commission did not err in finding that Rodriguez was permanently disabled under the futility prong of the odd-lot doctrine. The Commission did not err in finding that Rodriguez made a *prima facie* showing that he is not regularly employable in any well-known branch of the labor market absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on his part. Further, the Commission did not err in finding that Appellants failed to carry their burden of showing that: (1) a kind of suitable work in a well-known branch of the labor market exists and is regularly and continuously available; and (2) that there is an actual job of that kind of suitable work within a reasonable distance from Rodriguez's time of injury (or current) home, which he is able to perform or for which he can be trained.

## VI. CONCLUSION

We affirm the Commission's judgment. Costs on appeal to Rodriguez.

Chief Justice BURDICK, Justices EISMANN, HORTON and Justice *pro tem,* J. JONES, CONCUR.